Richard **PODOLL** and Robert Podoll, Plaintiffs–Appellees,

v.

**ARAPAHOE COUNTY BOARD OF EQUALIZATION, Defendant– Appellant.**

No. 94CA1144.

Colorado Court of Appeals, Div. V.

Dec. 21, 1995.

Rehearing Denied Jan. 18, 1996.

Certiorari Granted Aug. 5, 1996.

Podoll & Podoll, P.C., Robert C. Podoll, Denver, for Plaintiffs–Appellees.

Peter Lawrence Vana, III, County Attorney, Richard F. Mutzebaugh, Special Assistant County Attorney, Littleton, for Defendant–Appellant.

Opinion by Judge RULAND.

Defendant, Arapahoe County Board of Equalization (County), appeals from a judgment of the trial court reducing the valuation of plaintiffs' residential properties for taxation purposes. We affirm.

In the 1993 reassessment year, the county assessor appraised the improvements on the residences owned by plaintiffs, Richard and Robert Podoll, at $503,306 and $474,880, respectively. These valuations were protested to the assessor and then the County. As a result of these appeals, some adjustments were made. However, plaintiffs requested further relief by complaint in the district court pursuant to § 39–8–108(1), C.R.S. (1994 Repl.Vol. 16B).

All of the residences in the subdivision where plaintiffs resided were primarily large brick and frame units on one acre lots, with comparable construction quality and amenities. In support of their claim of overvaluation, exhibits were admitted indicating assessed valuations for the 1991 and 1993 tax years and averaged values per square foot for plaintiffs' residences as compared with over 20 similar residences in the same neighborhood. These exhibits reflect substantial disparity in the valuations on plaintiffs' residences as compared to the others.

A 1992 order of the Board of Assessment Appeals (BAA) was also admitted. This order reduced the valuations of plaintiffs' residences following the 1991 tax reassessment based upon evidence that the assessor's valuation of plaintiffs' residences exceeded $80

per square foot with a quality grade of "450" while comparable properties in the same subdivision were valued at only an average of $53 per square foot with quality grades of "400" and "425." In its order, the BAA found that the County's market valuation based upon comparable sales supported a higher valuation of plaintiffs' residences, but that it viewed plaintiffs' residence as overvalued under the foregoing circumstances.

Plaintiffs' evidence further showed that, in the majority of properties in the subdivision, improvement valuations increased an average of 10.73% from 1991, while plaintiffs' assessments increased by over 32%. This translated into an average assessment of over $63 per square foot for the comparables and approximately $85 per square foot for plaintiffs.

In support of the County's valuation, an appraiser from the assessors' office testified that she conducted an individual market approach appraisal of plaintiffs' properties using confirmed sales of comparable properties in the area since the 1991 reassessment. She indicated that, during the pendency of this appeal, she attempted to review the interiors of the properties, but was denied access by plaintiffs. As a result, all the information used both in the initial assessment and her appraisal was based upon the improvements as originally constructed.

She further testified that equalization in valuations was achieved by using a median value for a particular neighborhood, adjusted for size, quality grade, and specific amenities. According to this witness, the Property Tax Administrator's guidelines do not allow for an averaging of value per square foot as plaintiffs had done.

The trial court found no reasonable explanation for the disparity in the valuation of the plaintiffs' residences compared to the "vast majority" of comparable properties in the subdivision. The trial court concluded that the assessor had improperly failed to equalize the value of plaintiffs' residences with the others in the subdivision and ordered the valuations reduced to $381,365 and $386,240.

## I

The County first contends that plaintiffs failed to meet their burden to show that the County's valuations were incorrect because the per square foot calculations relied upon are not permissible indicators of market valuation for tax purposes. In effect, the County argues that plaintiffs are not entitled to a tax adjustment by establishing that their residences are taxed at a rate far in excess of similar homes in the same subdivision. Based upon the foregoing, the County concludes that the court was required to accept its evidence of market value based upon comparable sales in the area. We are not persuaded.

Section 39–1–104(10.2), C.R.S. (1994 Repl. Vol. 16B) directs the assessor to establish the "actual value" of taxable real property during each of two calendar years based upon the factors enumerated in § 39–1–103(5), C.R.S. (1994 Repl.Vol. 16B). This statute, in turn, requires that the actual value of residential property be determined based upon the market and cost approach to value.

A recent constitutional amendment, Colo. Const. art. X, § 20, also provides that:

> Actual value shall be stated on all property tax bills and valuation notices and, for residential real property, determined solely by the market approach to appraisal.

However, both Colo. Const. art. X, § 3, and § 39–1–101, C.R.S. (1994 Repl.Vol. 16B) require that:

> The actual value of all real and personal property ... shall be determined under general laws ... as shall secure just and equalized valuations for assessments....

*See Boulder County Board of Equalization v. M.D.C. Construction Co.*, 830 P.2d 975 (Colo.1992)(legislative declaration under § 39–1–101 requires general property tax provisions to be strictly construed for the purpose of securing just and equalized valuations).

Further, the equality mandated under Colo. Const. art. X, § 3 requires that the same means and methods be applied impartially to all the members of each class, operating equally and uniformly upon all persons or property in similar circumstances. *See*

*District 50 Metropolitan Recreation District v. Burnside,* 167 Colo. 425, 448 P.2d 788 (1968); *Citizens' Committee for Fair Property Taxation v. Warner,* 127 Colo. 121, 254 P.2d 1005 (1953).

Given this state of the law, we must first address the issue whether plaintiffs were entitled to challenge the County's assessment based upon evidence that the assessor had substantially over-valued their residences as compared to the others.

■ To the extent that the quoted constitutional provisions are arguably in conflict relative to the assessment of residential property, we must harmonize those provisions whenever possible. *See Bolt v. Arapahoe County School District,* 898 P.2d 525 (Colo.1995). That objective is accomplished here by interpreting the valuation concept contained in Colo. Const. art. X, § 20, to be subject, under appropriate circumstances, to the equalization requirement contained in Colo. Const. art. X, § 3. Under such an interpretation, a taxpayer would not be forced to forfeit a valid contention that the County abused its discretion by failing to equalize values.

■ Hence, here, the dispositive issue becomes whether the taxpayers have established a basis for reduction of their taxes because of the assessor's failure to equalize property values in the subdivision. We conclude that they have.

The right to challenge taxes imposed based upon the failure of the assessor to equalize the assessment of comparable property has been implicitly recognized by divisions of this court in two recent cases consisting of *Crocog Co. v. Arapahoe County Board of Equalization,* 813 P.2d 768 (Colo.App.1990) and *Bishop v. Board of Assessment Appeals,* 899 P.2d 251 (Colo.App.1994). In each of those cases, the court found no abuse of discretion in the BAA's decision not to award relief under the particular facts presented in each.

However, the division in *Bishop* in effect recognized that, under the equal protection analysis of the United States Supreme Court in *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923), the taxpayer would be entitled to an adjustment of real estate taxes assessed if it were shown that the assessor intentionally and systematically valued other similar properties at substantially less than full value. We view that rule to be applicable here.

Specifically, the trial court found with record support that adjustments of the taxes imposed had been ordered in 1992 by the BAA because of the disparity between the assessments against plaintiffs as compared to the other residences in the subdivision. Notwithstanding this determination by the BAA, the County could offer no reasonable explanation why there was a 32.8% increase in the assessed values of plaintiffs' residences following entry of the BAA's order but only a 10.73% average increase as to the vast majority of comparable residences. In our view, these findings are tantamount to a determination that the actions of the assessor were arbitrary, and we therefore conclude that the trial court did not abuse its discretion in ordering an adjustment. *See Sioux City Bridge Co. v. Dakota County, supra.*

II

The County also contends that plaintiffs' evidence relative to per square foot values assigned to their residences was inaccurate because their residences had been assigned a quality grade of 450 by the assessor, while the other comparable properties had quality grades of only 400 or 425. We disagree.

The County's appraiser testified that a "quality grade" adjustment is made to the median value of homes in a particular neighborhood, which is determined by an individual appraisal of a given home's interior. Although she stated that otherwise comparable properties in plaintiffs' subdivision had quality grades of 400 or 425, she was unable to explain why plaintiffs' homes were assigned a quality grade of 450. There was undisputed testimony that no improvements had been made on either of plaintiffs' residences since the 1991 valuations.

■ Under these circumstances, there is record support for the court's finding that the quality grade of 450 assigned to their properties was arbitrarily or mistakenly imposed. As such, we may not overturn the

trial court's findings. *Cherry Hills Country Club v. Board of County Commissioners,* 832 P.2d 1105 (Colo.App.1992).

## III

Next, the County contends that the square footage measurements used by plaintiffs to compute value per square foot figures in their exhibits were erroneous, resulting in substantially higher values per square foot than if the correct figures had been used. However, this issue was not raised in the trial court. We, therefore, do not address it for the first time on appeal. *See Artes–Roy v. City of Aspen,* 856 P.2d 823 (Colo.1993).

## IV

■ The County further argues that, by applying a flat percentage increase to the 1991 assessment values to determine the equalized valuation that should be applied to plaintiffs' residences, the court in effect presumed that all residences in a neighborhood increase or decrease in value at the same percentage. We find no merit in this contention.

As we read the trial court's order, it considered all of the evidence presented as to valuations and found that the actual valuation on the majority of comparable properties in plaintiffs' subdivision increased from the 1991 assessment at a rate of 10.73%. Accordingly, the trial court equalized plaintiffs' 1993 reassessment by applying a 10.73% increase to their 1991 valuations *as determined in the* BAA's 1992 order.

## V

Plaintiffs request an award of costs and attorney fees pursuant to C.A.R. 38(d), contending that this appeal is frivolous. We are not persuaded.

■ An appeal is "frivolous" if the appellant can present no rational argument based on the evidence or the law in support of his claim or defense, or if the appeal was pursued for the sole purpose of harassment or delay. *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993). From our examination of the record, we conclude that such is not the case here.

The judgment is affirmed.

ROTHENBERG, J., concurs.

ROY, J., dissents.

Judge ROY dissenting.

In my view, the trial court abused its discretion in holding that plaintiffs met their burden of showing that the assessments were incorrect. Therefore, I respectfully dissent.

The dispute here concerns only the value of residential improvements. The assessor, in the first instance, made a determination of market value using a "mass appraisal" technique based on recent sales in the vicinity using procedures approved by the Property Tax Administrator. While the technique is somewhat complex, in essence, the assessor determines the actual value by first ascertaining the average value per square foot for sales of comparable residential properties in the vicinity and then multiplying that figure by the number of square feet in each of the subject properties as reflected in the assessor's records. This procedure resulted in assessed values for plaintiffs' improvements of $463,280 and $503,306, respectively. The county board of equalization adjusted the latter to $457,454 by shifting value to the unimproved real estate, the value of which is undisputed. The taxpayers do not allege that this methodology violates any applicable statute, regulation, or approved procedure.

Following the commencement of this action in the trial court, the assessor undertook a more traditional, detailed, and focused appraisal using and adjusting comparable sales in the vicinity of the subject properties. This appraisal resulted in an actual value, as of June 30, 1992, of $687,270 and $678,600, respectively, for the total property, or $567,270 and $558,600 for the improvements, if the agreed values for the vacant real estate are deducted.

In challenging the assessor's valuation, plaintiffs did not introduce any evidence of the actual values of the subject properties by expert opinion or otherwise. Rather, they introduced evidence that the rate of increase

in value of the subject properties exceeded those of similar properties in the vicinity and then asserted what is essentially an equalization argument.

. Finding no reasonable explanation for the disparity in values and further finding that the assessor had failed to equalize the values of the subject properties with those in the vicinity, the trial court then applied the average increase in value of other properties in the vicinity, or 10.73%, to the values of the subject properties as determined by the Board of Assessment Appeals (BAA) in 1991 and reduced the valuations of the improvements to $386,240 and $381,365, respectively.

In my view, the evidence offered by plaintiffs and relied upon by the court was irrelevant in determining the actual values of the residential improvements on taxpayer's land, and the argument relating to equalization was misplaced.

## I.

The statutes and constitutional provisions relating to property taxation have been subject to numerous and frequent amendments. This activity has resulted in a complex system in terms of administration, valuation, equalization, and review. The foundation of property taxation is, however, actual value.

Article X, Section 3(1)(a) of the Colorado Constitution states, in pertinent part:

Each property tax levy shall be uniform upon all real and personal property not exempt from taxation under this article located within the territorial limits of the authority levying the tax. The *actual value* of all real and personal property not exempt from taxation under this article shall be determined under general laws, which shall prescribe such methods and regulations as *shall secure just and equalized valuations for assessments* of all real and personal property not exempt from taxation under this article. Valuations for assessment shall be based on appraisals by assessing officers to determine the *actual value* of property in accordance with provisions of law, which laws shall provide that *actual value* be determined by appropriate consideration of cost approach, market approach, and income approach to appraisal. However, the *actual value* of residential real property shall be determined solely by consideration of cost approach and market approach to appraisal; ... (emphasis added)

*See also* Colo. Const. art. X, § 20(8)(c) (requiring actual value to be stated on tax bills and notices).

Article X, Section 3 then requires that the General Assembly cause yearly studies to be conducted to ascertain whether each assessor has complied with the constitution and statutes in valuing property and has determined *actual value* and valuation for assessment of each and every class of taxable real and personal property consistent with such provisions. Colo. Const. art. X, § 3(2)(a).

The General Assembly has required that property be valued in two-year cycles commencing in 1989. Section 39–10–104(10.2), C.R.S. (1994 Repl.Vol. 16B). The tax year at issue here, 1993, is the first year of such a cycle.

Plaintiffs urge that the average increase in value, or a percentage basis, of properties in the "neighborhood" be applied to the 1991 valuation of the subject properties as determined by the BAA. However, the average increase in value, on a percentage basis, would not, except fortuitously, result in a determination of the actual value of the subject property predicated on a market approach.

The statute requires that market value be determined based on comparable sales information for an eighteen-month period terminating July 1 immediately preceding the assessment date, in this instance July 1, 1992, and with regard to the 1991 valuation, July 1, 1990. Section 39–1–104(10.3)(c), C.R.S. (1994 Repl.Vol. 16B). In addition, the valuation determined by the BAA in 1991 was based, in large part, on evidence of the actual cost of construction. The receipt of evidence of cost, and the use thereof, was appropriate in 1991, not so in 1993.

Thus, the evidence offered, and the methodology urged, by plaintiffs and adopted by the trial court is, in my view, extremely unlikely ever to result in the actual value of

the subject property predicated on a market approach. Accordingly, it was not relevant to the matter at issue and should not have been admitted.

Further, two divisions of this court have rejected similar arguments that the assessed value of real property should be reduced because other similar properties are undervalued. *See Bishop v. Colorado State Board of Assessment Appeals,* 899 P.2d 251 (Colo. App.1994); *Crocog Co. v. Arapahoe County Board of Equalization,* 813 P.2d 768 (Colo. App.1990).

Here, as in *Bishop* and *Crocog,* plaintiffs have not asserted that the values determined by the assessor are unsupported by the actual, or fair market value, of the subject properties, nor have they offered evidence to support that proposition. The argument here is simply that the values of the subject properties should not rise faster than those of other properties in the vicinity, or faster than the average value of properties in the vicinity. There may be a distinction here, but there is no difference.

## II.

Next, to the extent the trial court granted relief for equalization with respect to plaintiffs' assessed values, I would hold that such relief is not available.

The phrase "just and equalized" appears in Article X, Section 3 of the Colorado Constitution with respect to assessments, and in Article X, Section 15 of the Colorado Constitution, which creates the State Board of Equalization and defines its powers and responsibilities. Although the provisions were adopted at different times, I conclude that the phrase has the same meaning in both.

Article X, Section 15 of the Colorado Constitution states, in pertinent part:

(1)(a) There shall be in each county of the state a county board of equalization.... [T]he county boards of equalization shall raise, lower, adjust, and equalize valuations for assessment of taxes upon real and personal property located within their respective counties, subject to review and revision by the state board of equalization.

(b) There shall be a state board of equalization.... As may be prescribed by law, the state board of equalization shall review the valuations determined for assessment of taxes upon the various classes of real and personal property located in the several counties of the state and shall, upon a majority vote, raise, lower, and adjust the same to the end that all valuations for assessment of taxes *shall be just and equalized;* except that said state board of equalization shall have no power of original assessment. (emphasis added)

In *Lamm v. Barber,* 192 Colo. 511, 521, 565 P.2d 538, 545 (1977), our supreme court stated:

Assessment is the act of placing a value for tax purposes upon the property of a particular taxpayer. Equalization, on the other hand, is the act of raising or lowering the total valuation placed upon a class, or subclass, of property in the aggregate. Equalization deals with all the property of a class or subclass within a designated territorial limit, such as a county, without regard to who owns the individual parcels making up the class or subclass. Assessment relates to individual properties; equalization relates to classes of property collectively.

*See also People v. Hively,* 139 Colo. 49, 336 P.2d 721 (1959).

Equalization does not concern itself with differences, if any, in assessed values of individual properties but in the total valuation placed upon a class. Thus, the state board of equalization is not empowered to raise, lower, or adjust the assessed value of individual property. *BQP Industries, Inc. v. State Board of Equalization,* 694 P.2d 337 (Colo. App.1984).

The county board of equalization serves as both a board of equalization and a board of assessment appeals. Section 39–8–102(1), C.R.S. (1994 Repl.Vol. 16B) states:

The county board of equalization shall review the valuations for assessment of all taxable property appearing in the assessment roll of the county, directing the assessor to supply any omissions which may come to its attention. It shall correct any errors made by the assessor, and, whenev-

er in its judgment justice and right so require, it shall raise, lower, or adjust any valuation for assessment appearing in the assessment roll *to the end that all valuations for assessment of property are just and equalized within the county.* (emphasis added)

The assessor is directed by the constitution to determine *actual value,* and if every property is so valued, what is the point of "equalizing?" Despite its role with respect to equalization, the county board of equalization should not perform "equalization" when considering assessment appeals. Neither should the trial court.

In summary, equalization was never intended to soften the tax impact of owning property by diluting its actual value with the value of similar properties, with the value of other properties in the vicinity, or with changes in value of other properties in the vicinity.

I would reverse and remand with directions to enter judgment affirming the valuation assigned by the county board of equalization.