**ARAPAHOE COUNTY BOARD OF EQUALIZATION, Petitioner,**

v.

**Richard PODOLL and Robert Podoll, Respondents.**

No. 96SC91.

Supreme Court of Colorado, En Banc.

March 31, 1997.

Rehearing Denied April 14, 1997.

Kathryn L. Schroeder, Arapahoe County Attorney, Richard F. Mutzebaugh, Special

Assistant County Attorney, Littleton, for Petitioner.

Podoll & Podoll, P.C., Robert A. Kitsmiller, Robert C. Podoll, Richard B. Podoll, Denver, for Respondents.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Podoll v. Arapahoe County Board of Equalization*, 920 P.2d 861 (Colo.App.1995), which affirmed the district court's reduction of the improvement assessments assigned to two residential properties.[1] The trial court reduced the two properties' improvement assessments to make them equal to the assessments assigned to a majority of properties in the same subdivision. The court of appeals affirmed, finding that the assessor had acted arbitrarily in valuing the subject properties. We reverse.

## I.

Richard and Robert Podoll (the Podolls) each built residences in the Charlou Circle subdivision of Cherry Hills in 1989. During and after construction, appraisers with the Arapahoe County Assessor's Office (the assessor) inspected the interior of each house and interviewed the builder for the purpose of assigning a "quality grade" to the houses.[2] The assessor assigned each of the Podolls' houses a quality grade of 450, whereas most of the other houses in the neighborhood had either a 400 or 425 quality grade. The Podolls did not challenge the assessor's quality grade determination.

In 1991, the Podolls protested the assessments assigned to their residences to the Arapahoe County Board of Equalization (Board of Equalization), which refused to

modify the valuations. The Podolls then appealed to the Board of Assessment Appeals, claiming that their assessments were wrongly valued because they were significantly higher than the assessments assigned to other residences in the subdivision. The Board of Assessment Appeals agreed and reduced the Podolls' 1991 assessments.

In 1993, the improvements on Richard Podoll's property were assessed at $503,306 while the improvements on Robert Podoll's property were assessed at $474,880. The 1993 valuations showed a significant increase in the Podolls' improvement assessments since the 1991 tax year, where they were assessed $344,410 and $348,812, respectively. This increase led the Podolls to protest the valuations to the assessor, who refused to modify the assessments. The Podolls then appealed to the Board of Equalization, which modified the assessments slightly.[3]

The Podolls challenged the Board of Equalization's determination in the Arapahoe County District Court. At trial, the Podolls introduced statistics of the assessment values assigned to comparable homes in the subdivision. These statistics showed a 10.73% increase in improvement assessments between the 1991 and 1993 tax years for most subdivision properties, whereas the Podolls' improvement assessments rose 32.82%. The Podolls argued that this disparate rise in the improvement assessments assigned to similarly situated properties violated the requirement in article X, section 3(1)(a), of the Colorado Constitution that assessments be "just and equalized."

The Board of Equalization presented evidence explaining the appraiser's method for assigning actual values to the Podolls' properties.[4] On cross-examination, the appraiser

---

1. We granted certiorari to consider the following issue:

   Whether the district court erred in utilizing equalization methods to modify a "market approach" based appraisal of the improvements on two residential real estate parcels.

2. An appraiser testified at the trial that the quality grade is an evaluation of the interior construction of the home which takes into account the quality of such things as lighting, tile, flooring, and fixtures.

3. The Board of Equalization reduced Richard Podoll's improvements assessment and raised his land assessment. These changes had a minimal effect on Richard Podoll's overall assessment.

4. The appraiser testified that she began each 1993 valuation by gathering data on all homes sold in the subdivision during the statutory tax period. The assessor then divided the total sales price of these homes by their total square footage to arrive at a median value measured in dollars per square foot. This median value was then assigned to each residence in the subdivision.

revealed that the high quality grades assigned to the Podolls' homes were largely responsible for the disparity in improvement assessments between the Podolls and their neighbors.[5]

The district court found that the disparate increase between the Podolls' improvement assessments and other subdivision properties was unfair and unequal in violation of article X, section 3, of the Colorado Constitution. The district court subsequently reduced the Podolls' improvement assessments to reflect the more common 10.73% increase within the subdivision.[6] The district court further ordered the assessor to reassess the quality grades for the Podolls' properties to prevent future assessment disparities.

The court of appeals affirmed, holding that the Podolls were entitled to a reduction in their improvement assessments because the assessor had failed to equalize property values in the subdivision. Additionally, the court of appeals found that there was "record support" for the trial court's finding that the 450 quality grade was arbitrarily or mistakenly imposed.[7]

## II.

The Board of Equalization argues that the court of appeals erred in affirming the district court's use of equalization methods to reduce the Podolls' assessments. We agree.

## A.

Article X, section 3, of the Colorado Constitution establishes a framework for the uniform taxation of real and personal property. *See Douglas County Bd. of Equalization v.*

The individual characteristics of each house were then measured using the quality grade, the number of bathrooms, the age of the house, new improvements, and whether the residence had a walkout basement.

**5.** The appraiser testified that the difference between a 400 and 450 quality grade could result in as much as a twenty-two percent difference in a property's improvement assessment.

**6.** The district court ordered the assessor to reduce Richard Podoll's improvements assessment to $381,365 and reduce Robert Podoll's improvements assessment to $386,240.

*Fidelity Castle Pines, Ltd.,* 890 P.2d 119, 122 (Colo.1995). The determination of the actual value of property is the essential component of that framework. *See id.; El Paso County Bd. of Equalization v. Craddock,* 850 P.2d 702, 704 (Colo.1993).[8] Article X, section 3(1)(a), of the Colorado Constitution sets forth the general procedure used by the assessor to determine the actual value of residential property:

> *The actual value of all real and personal property not exempt from taxation under this article shall be determined* under general laws, which shall prescribe such methods and regulations as shall secure *just and equalized* valuations for assessments of all real and personal property.... Valuations for assessment shall be based on appraisals by assessing officers to determine the actual value of property in accordance with provisions of law.... [T]he actual value of residential real property shall be determined solely by consideration of cost approach and market approach to appraisal....

(Emphasis added.) When a taxpayer protests the assessment assigned to the taxpayer's property, the Board of Equalization for that county is authorized to raise, lower, adjust, and equalize assessments whenever "justice and right so require." § 39–8–102(1), 16B C.R.S. (1994); *see also* Colo. Const. art. X, § 15(1)(a). It is the constitutional requirement that valuations be "just and equalized" as well as the Board of Equalization's authority to equalize assessments which serve as the basis for the Podolls' challenge to their improvement assessments.

**7.** Judge Roy filed a dissent to the court of appeals decision, arguing that evidence of percentage increases in the assessments of other properties in the neighborhood was irrelevant. Judge Roy also asserted that the district court did not have the constitutional or statutory authority to equalize assessments.

**8.** Additionally, section 39–1–103(5)(a), 16B C.R.S. (1996 Supp.), provides that "[a]ll real and personal property shall be appraised and the actual value thereof for property tax purposes determined by the assessor of the county wherein such property is located."

In *Lamm v. Barber,* 192 Colo. 511, 521, 565 P.2d 538, 545 (1977), *overruled on other grounds by Board of County Comm'rs v. Fifty–First General Assembly,* 198 Colo. 302, 308, 599 P.2d 887, 891 (1979), we explained the relative roles equalization and assessment play in our system of property taxation:

> Assessment is the act of placing a value for tax purposes upon the property of a particular taxpayer. Equalization, on the other hand, is the act of raising or lowering the total valuation placed upon a class, or subclass, of property in the aggregate. Equalization deals with all the property of a class or subclass within a designated territorial limit, such as a county, without regard to who owns the individual parcels making up the class or subclass. Assessment relates to individual properties; equalization relates to classes of property collectively.

*Id.* at 521, 565 P.2d at 545.

Recognizing this difference, two divisions of the court of appeals have rejected equalization arguments similar to the one asserted by the Podolls here. In *Bishop v. Colorado State Board of Assessment Appeals,* 899 P.2d 251, 254 (Colo.App.1994), the court of appeals held that reductions in the property owners' assessments were not warranted to conform the property owners' assessed values to other assessed values in the subdivision. Similarly, in *Crocog Co. v. Arapahoe County Board of Equalization,* 813 P.2d 768, 770 (Colo.App.1990), the court of appeals refused to reduce a property owner's assessment in light of similarly situated property that had received an erroneous, lower assessment. In *Crocog,* the court of appeals acknowledged that,

> while equalization of the basis for taxation is the end sought to be achieved by uniform laws and by uniform means and methods of assessment, perfect uniformity

in actual assessment is not required either under the constitution or the statute.

*Crocog,* 813 P.2d at 770.

■ Our state constitution and statutes make clear that individual assessments are based upon a property's actual value and that actual value may be determined using a market approach, which considers sales of similar properties.[9] However, actual value also obligates the assessor to consider the specific attributes of each property's improvements, including the assigned quality grade, to determine the property's individual worth. Due to the individualized treatment each property receives, actual values may vary within a subdivision. Conversely, equalization concerns aggregate valuations of certain classes of property and does not account for the specific attributes of individual properties. *See Lamm,* 192 Colo. at 521, 565 P.2d at 545.

■ In this case, the market approach used by the assessor determined the median value for all of the properties in the subdivision and applied this median value to each individual residence. In this regard, properties throughout the subdivision were properly equalized as a class. The assessor then measured the value of each property's specific improvements to determine the property's actual value.

■ Based upon the assessments assigned to other properties in the subdivision, the district court used equalization to reduce the Podolls' improvement assessments. The district court's use of equalization was improper because it disregarded any quality or value differences that may have existed among the subdivision properties. The quality grade and other unique characteristics that, in addition to market value, make up a property's actual value are individual attributes that run contrary to equalization theories. Therefore, equalization is not a proper

---

9. We note that there may be a conflict in the constitutional provisions regarding the methods used to calculate actual value. *Compare* Colo. Const. art. X, sec. 3(1)(a) (actual value shall be determined solely by consideration of cost approach and market approach to appraisal) *with* Colo. Const. art. X, sec. 20(8)(c) (actual value shall be determined solely by the market ap-

proach to appraisal). We need not reconcile these potentially conflicting constitutional provisions because this case concerns whether equalization is a proper method of evaluating individual properties. Furthermore, the market approach used in the valuation of the Podolls' properties does not conflict with either of these constitutional provisions.

means of evaluating the value of a property's specific improvements. For this reason, the proper focus of the district court's inquiry was not whether the assessor's valuation of the Podolls' individual improvements was equal to the values assigned to similar subdivision properties, but whether the assessor's valuation of the Podolls' improvements was correct.

### B.

 An assessor's ascertainment of the value of property for taxation is presumed to be correct. *See Colorado & Utah Coal Co. v. Rorex,* 149 Colo. 502, 507, 369 P.2d 796, 799 (1962); *117th Assocs. v. Jefferson County Bd. of Equalization,* 811 P.2d 461, 463 (Colo.App. 1991). To rebut that presumption, a protesting taxpayer must prove by a preponderance of the evidence at trial that the assessor's valuation is wrong. *See County Bd. of Equalization v. Board of Assessment Appeals,* 743 P.2d 444, 446 (Colo.App.1987).

Section 39–8–108(1), 16B C.R.S. (1996 Supp.), provides that taxpayers challenging a determination of the Board of Equalization are entitled to have their case heard by either the Board of Assessment Appeals or the district court in a trial *de novo.* If a taxpayer elects to pursue a trial *de novo,* the district court acts as if the matter were brought as an original proceeding and makes its own independent determination of the facts. *See Arapahoe Partnership v. Board of County Comm'rs,* 813 P.2d 766, 768 (Colo.App.1990). Ordinarily, we will defer to the district court's findings of fact unless they are clearly erroneous and not supported by the record. *See First Interstate Bank v. Tanktech, Inc.,* 864 P.2d 116, 122 (Colo.1993).

In this case, the Podolls' improvement assessments increased more than most properties in the subdivision due to high quality grades.[10] In reviewing the assessor's quality grade determinations, the trial record reveals that: (1) appraisers inspected the Podolls' homes on several occasions before assigning the quality grades; (2) the Podolls never challenged the quality grade determinations; and (3) the testifying appraiser was unable to offer an opinion as to whether the quality grades were presently accurate because she could not inspect the interior of the Podolls' homes.[11] None of these facts establishes that the quality grades, which were primarily responsible for the Podolls' high improvement assessments, were erroneously or mistaken assigned. Furthermore, the record is devoid of any other evidence that the Podolls' individual improvement assessments were wrongly valued.[12] Therefore, the record does not justify the district court's reduction of the Podolls' 1993 assessments.

### III.

In determining a property's actual value for assessment purposes, the assessor must consider the property's specific attributes. As a result, assessments among properties similarly situated may differ. Because the Podolls failed to present any evidence indicating that the assessor's valuation of their improvements was incorrect, they were not entitled to an assessment reduction. We therefore reverse the court of appeals and remand with directions to reinstate the Board of Equalization's assessments.

SCOTT, J., does not participate.

10. It is worth noting that a residence at 46 Charlou Circle was also assigned a 450 quality grade, which led to a 31.49% rise in improvement assessments from 1991 to 1993. That residence is not subject to this appeal.

11. The appraiser testified that before the trial she requested permission to view the interior of the Podolls' residences to determine if the quality grades were presently accurate; however, the Podolls refused to allow her entry.

12. In coming to its decision, the district court relied solely upon statistics showing a disparity in percentage increases among improvement assessments in the subdivision. While the valuation of property similarly situated is credible evidence at trial pursuant to section 39–8–108(5)(b), 16B C.R.S. (1994), a disparity in percentage increases in the assessments of neighboring properties does not, by itself, warrant assessment reduction.