**GILPIN COUNTY BOARD OF EQUAL-IZATION and the Board of Assessment Appeals, Petitioners,**

v.

**William C. RUSSELL, Jr., Respondent.**

**No. 96SC99.**

Supreme Court of Colorado, En Banc.

June 23, 1997.

As Modified on Denial of Rehearing Aug. 11, 1997.

Petrock & Fendel, P.C., James J. Petrock, Frederick A. Fendel, III, Gilpin County Attorney, Denver, for Petitioner Gilpin County Board of Equalization.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Larry A. Williams, First Assistant Attorney General, Mark W. Gerganoff, Assistant Attorney General, Denver, for Petitioner The Board of Assessment Appeals.

Holley, Albertson & Polk, P.C., George Alan Holley, Howard R. Stone, Golden, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

The Board of Assessment Appeals (BAA) and Gilpin County Board of Equalization (BOE) challenge the court of appeals determination in *Russell v. Gilpin County Board of Equalization,* 920 P.2d 840, 841–42 (Colo. App.1995), that a board of equalization member may not testify regarding a BOE equalization decision at a subsequent hearing before the BAA.[1] The court of appeals held that

---

1. The following issue was accepted for certiorari review: Whether the "mental process rule" applies in Colorado to a *de novo* Board of Assessment Appeals hearing, and bars a member of the

Board of Equalization from voluntarily testifying in support of the value set by the Board of Equalization when (1) that value is greater than the taxpayer's value and less than the assessor's

the mental process rule should have been invoked by the BAA to bar the testimony of a county commissioner who participated in making the BOE decision. Accordingly, the court of appeals panel remanded a portion of this case regarding the residence of the taxpayer, Schedule 2741, back to the BAA for further proceedings "to be conducted without testimony by a member of the BOE." *Russell*, 920 P.2d at 842. We affirm the judgment of the court of appeals.

## I.

In 1993, taxpayer William Russell (Russell) protested the Gilpin County tax assessor's valuation of certain parcels of his properties listed in eleven separate schedules. *See* § 39–5–121, 16B C.R.S. (1994 & 1996 Supp.). After tax assessor review and partial adjustment of several schedules, Russell appealed to the BOE pursuant to section 39–8–106, 16B C.R.S. (1994).[2] The valuations under appeal included several mining claims, two residential properties used for storage, four commercial properties, and Russell's personal residence.

After an August 5, 1993 hearing before the BOE, two of the eleven property values under petition were adjusted by that administrative body, including Russell's personal residence, and nine remained unchanged. Russell appealed to the BAA,[3] which held a *de novo* hearing for tax year 1993 on July 18, 1994. *See* § 39–8–108(1), 16B C.R.S. (1994 & 1996 Supp.); BAA Procedures, 8 C.C.R. § 1301–1 (1997).

Russell and his expert witness, state certified general appraiser Michael Early (Early), testified at the BAA hearing regarding Schedule 2741, Russell's primary residence for over forty years, located in what is now the heart of the gaming district of Central City, Colorado. The record reveals that the property measures approximately 1,632 square feet, and is entirely covered by a two-story house that has common walls with adjoining structures; no modification of the building structure can be performed without impacting the adjoining structures. Early testified that the property does not meet the square-foot zoning requirements for gaming.[4] Russell advocated for an overall square-foot value of $100, which included $40,000 for improvements, with the total being $163,200.

Gilpin County tax appraiser, Pam North, testified on behalf of the Gilpin County tax assessor, Glenda Allen. North stated that Russell's residence is a nonconforming use in the heavily commercial gaming district of Central City and that comparable sales of

value, (2) the Board of Assessment Appeals rejected the taxpayer's value, and (3) the Board of Equalization member's testimony is the sole evidence available during the [Board of Assessment Appeals] hearing to support the Board of Equalization value.

**2.** Each board of equalization in Colorado is comprised of the board of county commissioners, *see* Colo. Const. art. 10, § 15, with the exception of the City and County of Denver, *see* § 39–8–101, 16B C.R.S. (1994). The boards of county commissioners consist of three members, two of whom constitute a quorum, *see* § 1–4–205(2), 1B C.R.S. (1980 & 1996 Supp.), and counties with populations of seventy thousand or more have the option to increase the membership on the board to five members, with three constituting a quorum, *see id.*

**3.** The Board of Assessment Appeals is a quasi-judicial tribunal, *see* § 39–2–123(1), 16B C.R.S. (1994), which hears appeals from county boards of equalization, *see* § 39–2–125(1)(c), 16B C.R.S. (1994), and is comprised of three members appointed by the governor, *see* § 39–2–123(2), 16B C.R.S. (1994); *see also* § 39–2–125(1)(c)(I) (empowering General Assembly to appoint addition-

al members in event of extraordinary work load). The BAA additionally serves in an appellate capacity regarding orders and decisions of the property tax administrator. *See* § 39–2–125(1)(b)(I), 16B C.R.S. (1994). The property tax administrator may review certain county determinations not relevant here. *See* § 39–2–116, 16B C.R.S. (1994); § 39–1–113(3), 16B C.R.S. (1994 & 1996 Supp.). The Board of Assessment Appeals exercises its powers, duties, and functions pursuant to the Administrative Organization Act of 1968, §§ 24–1–101 to –137, 10A (1994 & 1996 Supp.), *see* § 39–2–123(4), 16B C.R.S. (1994), and the State Administrative Procedure Act, §§ 24–4–101 to –108, 10A C.R.S. (1994 & 1996 Supp.).

**4.** Russell's expert witness stated in his summary that development could "be accomplished by an adjoining land owner, however, the present owner adjacent to the west is the Mormon Church with no indicated interest in gaming development and the owner to the east was the Molly's Casino which has closed with bankruptcy proceedings to begin."

gaming land rather than residential property were used to arrive at valuation. Asked on cross-examination whether this small property could be used for gaming, she testified that historic preservation requirements might apply to restrict alteration of the structure, that small gaming establishments had gone out of business in Central City, and that only one small casino was still in business. After North's testimony, the county attorney called Gilpin County Commissioner Ralph H. Knull as a witness. Knull sat as a member of the BOE during the August 5, 1993 valuation hearing regarding Schedule 2741. The county offered the commissioner's testimony to prove the "result of that hearing" and what "his analysis was in arriving at the conclusion."

Russell's attorney objected that the testimony of Knull regarding the BOE hearing would be improper as a matter of law:

[T]he results [of the BOE decision] are known; they are of record . . . and you know them.

[Knull] cannot testify as to what his analysis was any more than . . . a multiple judge court [could] be inquired . . . as to his [sic] determination of an issue. . . .

The county attorney responded that Knull "was present throughout the entire process, . . . Mr. Knull is here for cross-examination. If [Russell's attorney] has questions about the rationale employed, have at it."

The BAA chairman overruled the objection. Knull then testified that the tax assessor had originally valued Russell's residence at $450 per square foot, for a value of $734,400. Improvements were valued at $57,680, for a total valuation of $792,080. The BOE reduced the value to $325 per square foot and did not adjust the improvements, resulting in a total valuation of $588,080 for Russell's residence. Knull stated that Schedule 2741 was the only residential property in the core gaming district; accordingly, the BOE's decision "was based on comparables of differ-

ent properties that we reviewed, and it was really kind of an arbitrary figure that we came up with believing that this was a reasonable figure for a property in the core gaming district."

On August 18, 1994, the BAA issued its decision. It decided that the value of Russell's residence should be calculated at $200 per square foot, that the improvements were worth $1,000, and that the total actual value amounted to $384,680, which amount is $203,400 below the equalized value assigned by the BOE to the property. Russell appealed the BAA valuation of his residence to the court of appeals, asserting that the BAA decision was unsupported by substantial evidence. *See* § 24–4–106(7), –106(11), 10A C.R.S. (1988). That court held that the BAA should have barred the county commissioner's testimony.[5]

We agree and hold that the BAA abused its discretion in allowing County Commissioner Knull to testify regarding the BOE decision and affirm the court of appeals decision to remand the matter of Russell's residence to the BAA for a redetermination of value.

## II.

We conclude that testimony of a member of the BOE before the BAA or the district court regarding a BOE decision in which he or she participated is barred by the mental process rule.

### A.

#### *The Role of a County Board of Equalization*

■ The basic framework for fair and uniform ad valorem taxation of real and personal property is set forth in the Colorado Constitution, Article X, Section 3, and is dependent upon a calculation of the "actual value" of the property to be taxed. *Douglas County Bd. of Equalization v. Fidelity Cas-*

---

5. Russell also argued to the court of appeals that the BAA valuation of his residence was derived from a mathematical error. Based upon the 1,632 square-foot dimension of the property, the $200 per square foot multiplier should have yielded $326,400, not $383,680. With the $1,000.00 value for improvements, the total BAA valuation would amount to $327,400, not $384,680. The BAA order does not explain the rationale for this discrepancy. The order states only that the adjusted actual value was "made due to the size of the subject property."

*tle Pines, Ltd.,* 890 P.2d 119, 122 (Colo. 1995). The constitution provides authority to the General Assembly to elaborate on general procedures for assessment of property, including equalization:

> Each property tax levy shall be uniform upon all real and personal property ... located within the territorial limits of the authority levying the tax. The actual value of all real and personal property ... shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and *equalized* valuations for *assessments* of all real and personal property....

Colo. Const. art. X, § 3 (emphasis added). The county tax assessor makes the initial assessment. *See* Colo. Const. art. X, § 3; § 39–5–104, 16B C.R.S. (1994). After taxpayer protest of the initial assessment to the county tax assessor, the taxpayer may seek review and decision by the BOE, *see Arapahoe County Bd. of Equalization v. Podoll,* 935 P.2d 14, 16 (Colo.1997), which decision can then be reviewed by the BAA or district court *de novo. See id.* at 18.[6]

■ Assessment is the " 'act of placing a value for tax purposes upon the property of a particular taxpayer,' " and equalization " 'deals with all the property of a class or subclass within a designated territorial limit, such as a county,' " in the aggregate. *Podoll,* 935 P.2d at 17 (quoting *Lamm v. Barber,* 192 Colo. 511, 521, 565 P.2d 538, 545 (1977)). Thus, assessment deals with an individualized valuation of a certain property, while equalization, a leveling function, considers whether the particular property assessment is in balance with assessments of other similarly situated properties as a collective group within the jurisdiction.[7]

■ In Colorado, all residential real property is valued[8] for property tax purposes by the assessor of the county where the property is located, § 39–1–103(5)(a), 16B C.R.S. (1994 & 1996 Supp.). Actual value may be determined using the market approach, which considers sales of similar properties.[9] *See Podoll,* 935 P.2d at 17. Valuation for assessment purposes is dependent upon the actual value of the property in a base year mandated by statute, and whether the property is agricultural, residential, commercial or mining property. *See Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146, 148 (Colo.1988).

In order for a taxpayer to preserve the right of protest, the taxpayer must notify the tax assessor of his or her protest and objection no later than May 27 by mail, or June 1 by in-person notification. *See* § 39–5–121(1). Commencing on June 15, the county tax assessor begins to hear objections. *See* § 39–5–122(1), 16B C.R.S. (1994). The assessor is required to take into account any information presented by the taxpayer in determining whether an adjustment in value is warranted, *see* § 39–5–122(5)(b), 16B C.R.S. (1994), and if the taxpayer's objection and protest results in a written denial, the taxpayer may appeal

---

**6.** The Colorado Constitution authorizes creation of county and state boards of equalization, and creates the office of the property tax administrator, who is appointed by the state board of equalization. Colo. Const. art. X, § 15. The property tax administrator heads the division of property taxation in the department of local affairs, § 39–2–101, 16B C.R.S. (1994). The tax administrator's duties include general administration of the property tax laws of the state. Colo. Const. art. X, § 15. The BAA, which exists within the division of property taxation, is empowered to hear appeals from orders and decisions of the property tax administrator, from decisions of county boards of equalization, from determinations of county tax assessors under certain circumstances, and from decisions of the boards of county commissioners. *See* § 39–2–125(1), 16B C.R.S. (1994).

**7.** As explained by Justice William E. Doyle writing for this court, while the purpose of the state board of equalization is to equalize valuations on a statewide basis, the individualized taxpayer "has been given an opportunity to be heard and to have a review with respect to his own property valuation at the county level." *People v. Hively,* 139 Colo. 49, 65, 336 P.2d 721, 730 (1959).

**8.** By May 1 of each year, county tax assessors must mail notice to real property owners of increases in valuations of their properties. *See* § 39–5–121(1).

**9.** Market value has been defined as " 'what a willing buyer would pay a willing seller under normal economic conditions.' " *Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146, 151 (Colo.1988) (quoting *May Stores Shopping Centers, Inc. v. Shoemaker,* 151 Colo. 100, 110, 376 P.2d 679, 683 (1962)).

to the BOE, *see* § 39–5–122(3), 16B .C.R.S. (1994).

■ The BOE is to focus on achieving "just and equalized" assessment of property within the county. When "justice and right so require," the BOE "shall raise, lower, or adjust any valuation for assessment appearing in the assessment roll." [10] § 39–8–102(1), 16B C.R.S. (1994); *see Podoll,* 935 P.2d at 16.

A county BOE is statutorily empowered to "hear petitions from all persons whose objections or protests have been refused or denied by the assessor," provided that the form and content of a petition conforms to the statute. § 39–8–106(1). After the county BOE receives the taxpayer's appeal, it is required to set a hearing date and notify the taxpayer. *See* § 39–8–106(2). With "no presumption in favor of any pending valuation," the BOE "shall hear and consider all testimony and examine all exhibits produced or introduced by either the petitioner or the assessor." *See* § 39–8–107(1), 16B C.R.S. (1996 Supp.). Upon request by a taxpayer, the assessor is required by statute to make available, at least two days prior to the hearing, all data used to support the assessor's valuation. *See* § 39–8–107(3), 16B C.R.S. (1994).

■ Either the tax assessor or the assessor's representative must be present at the BOE hearing to produce evidence regarding valuation of the property under appeal. *See* § 39–8–107(1), 16B C.R.S. (1994 & 1996 Supp.). A county BOE must complete its proceedings by August 5, *see* § 39–8–107(2), 16B C.R.S. (1994), and the board must issue a written decision granting or denying the taxpayer's petition in whole or in part, *see* § 39–8–107(1). There is no provision requiring the BOE to make a record of its proceedings. *See* § 39–8–107(1). The state Administrative Procedure Act does not apply to the

BOE proceeding. *See Carrara Place, Ltd. v. Board of Equalization,* 761 P.2d 197, 205 (Colo.1988). But the BOE decision must be stated in writing and mailed to the taxpayer no later than August 10. *See* § 39–8–107(2).

■ The proceeding before the county BOE is quasi-judicial in nature. *See May Stores Shopping Ctrs., Inc. v. Shoemaker,* 151 Colo. 100, 112, 376 P.2d 679, 684 (1962). Quasi-judicial action is characterized by the following factors: (1) a local or state law requiring that notice be given before the action is taken; (2) a local or state law requiring a hearing before the action is taken; and (3) a local or state law directing that the action results from the application of prescribed criteria to the individual facts of the case. *See Hadley v. Moffat County Sch. Dist.,* 681 P.2d 938, 945 n. 3 (Colo.1984). Such criteria may include broadly stated provisions of an agency's enabling act, regulations promulgated thereunder, or both. *See Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332, 1342 (Colo.1997). Quasi-legislative action involves the formulation of regulatory policy of general application to an affected group. Quasi-judicial action focuses on the application of legislative or quasi-legislative requirements to an individual under a particular set of facts.[11] *See Colorado Ground Water Comm'n v. Eagle Peak Farms,* 919 P.2d 212, 217 (Colo.1996).

Quasi-judicial decisions by administrative agencies are normally subject to limited review on appeal based upon the agency record. Here, the legislature chose to dispense with the requirement of keeping an administrative record of the BOE proceeding, and to allow a taxpayer to proceed *de novo* on appeal from the BOE to either the BAA or a district court; however, that choice does not

---

10. The broad delegation of power granted in section 39–8–102(1) to a county BOE also includes the power to order the county tax assessor to revalue all properties within a municipality, based upon a recognized disparity in land values between the municipality and surrounding properties. *See Wenner v. Board of Assessment Appeals,* 866 P.2d 172, 173–74 (Colo.App.1993).

11. "If the governmental decision is likely to affect the legal interests of specific individuals, and if the governmental decision is reached through

the application of preexisting legal standards or policy considerations to present or past facts developed at a hearing, then 'one can say with reasonable certainty that the governmental body is acting in a quasi-judicial capacity in making its determination.'" *Colorado State Bd. of Land Comm'rs v. Colorado Mined Land Reclamation Bd.,* 809 P.2d 974, 981 (Colo.1991) (quoting *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village,* 757 P.2d 622, 627 (Colo.1988)).

alter the quasi-judicial nature of the BOE proceeding. The elements of quasi-judicial action are manifested by the BOE statutory provisions. The BOE decision is required by statute to be preceded by written notice and a hearing, and the BOE is to apply the criteria of "just and equalized assessment," which shall be achieved through raising, lowering, or adjusting the assessment, as appropriate. *See* § 39–8–102(1). The BOE must notify "the petitioner and the assessor in writing" of its decision. *See* § 39–8–107(1). Thus, the indicia of quasi-judicial action attend a BOE decision.

## B.

### *The Roles of the Board of Assessment Appeals and the County Tax Assessor*

A taxpayer dissatisfied with a BOE decision denying a petition in whole or in part has the option of submitting the case to arbitration pursuant to section 39–8–108.5, 16B C.R.S. (1994), or appealing the valuation set by the assessor or the adjusted BOE valuation to either the BAA or the district court of the county where the property is located for a trial *de novo*. *See* § 39–8–108(1). In the event of an appeal to the district court or BAA by the taxpayer, both the taxpayer and the assessor, who were the parties to the BOE proceeding, become parties to the BAA proceeding and have the right to present evidence. *See* § 39–8–107(1). The BOE notice to the taxpayer of his or her right to appeal must state that

> if the appeal is to the board of assessment appeals, the hearing before the board of assessment appeals shall be the last hearing at which testimony, exhibits, or any other type of *evidence may be introduced by either party* and that, if there is an appeal to the court of appeals ... the record from the hearing before the board of assessment appeals and no new evidence shall be the basis for the court's decision.

§ 39–8–107(1) (emphasis added). The words "either party" in this context refer to "the petitioner" and "the assessor," as specified in a previous sentence of section 39–8–107(1) ("On the basis of the testimony produced and the exhibits introduced, the board shall grant or deny the petition, in whole or in part, and shall notify the petitioner and the assessor in writing.").

■ The BAA, or district court, is precluded from imposing a valuation on the property in excess of that set by the BOE: "The valuation shall not be adjusted to a value higher than the valuation set by the county board of equalization pursuant to section 39–8–107, except as specifically permitted pursuant to section 39–5–125."[12] § 39–8–108(5)(a), 16B C.R.S. (1996 Supp.). With the exception of the cap placed by the BOE on subsequent valuation, the *de novo* proceeding before the BAA or district court "is commonly understood as a new trial of an entire controversy," *B.C., Ltd. v. Krinhop*, 815 P.2d 1016, 1018 (Colo.App.1991), and any evidence that was or could have been presented before the BOE may be presented for a new and separate determination. *See id.*

The statute, *see* § 39–8–107(1), directs that the county tax assessor, or the assessor's authorized representative, shall be present at a hearing before the BOE. Thus, under the statute, the taxpayer and the assessor are the advocates who participate in evidentiary presentation to the BOE. In addition, the assessor, having been a necessary and proper party to the proceedings before the BOE, is expected to testify and present documentary evidence *de novo* in the event the taxpayer appeals the BOE's decision. *See Krinhop*, 815 P.2d at 1018. At hearings before the BAA, parties may secure evidence by subpoena, *see* Rule 10, BAA Procedures, 8 C.C.R. 1301–1 (1997); 24–4–105(4) & (5), 10A C.R.S. (1988 & 1996 Supp.), may conduct discovery pursuant to a BAA order, utilizing the procedures of C.R.C.P. 26 through 37, and are required to exchange exhibits to be presented at trial ten days before the hear-

---

**12.** Section 39–5–125, 16B C.R.S. (1994), provides at subsection (1):

> Whenever it is discovered that any taxable property has been omitted from the assessment roll of any year or series of years, the assessor

shall immediately determine the value of such omitted property and shall list the same on the assessment roll of the year in which the discovery was made. . . .

ing, *see* Rule 11, BAA Procedures, 8 C.C.R. 1301–1 (1997).

The rules of evidence for civil non-jury cases in district courts and the hearing provisions of the Administrative Procedure Act (APA), *see* § 24–4–105, 10A C.R.S. (1988 & 1996 Supp.), apply to BAA hearings. *See* Rule 14(b), BAA Procedures, 8 C.C.R. 1301–1 (1997). Upon request by the taxpayer, the assessor must make all of its data available at least two working days prior to the hearing. *See* § 39–8–108(5)(d), 16B C.R.S. (1994). The BAA is required to provide written findings of fact and conclusions of law to the parties. *See* Rule 18, BAA Procedures, 8 C.C.R. 1301–1 (1997); § 24–4–105.

BAA decisions are reviewed by the court of appeals pursuant to APA section 24–4–106(11), *see* § 39–8–108(2), 16B C.R.S. (1994 & 1996 Supp.); *Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146, 149 (Colo.1988) (judicial review is governed by standards set forth in section 24–4–106 of APA). The court of appeals may set aside the BAA decision on various grounds including "an abuse or clearly unwarranted exercise of discretion," or if it is "otherwise contrary to law." § 24–4–106(7); *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27, 34 (Colo.1990).

## C.

### The Mental Process Rule

██ The mental process rule is a common law evidentiary privilege which "prohibits inquiring or probing the mental processes or procedure by which an administrative decision is reached, and the only exception to this rule is where an allegation has been made and there is a clear showing of illegal or unlawful action, misconduct, bias or bad faith" on the part of the decision maker. *Public Utils. Comm'n v. District Court,* 163

Colo. 462, 469, 431 P.2d 773, 777 (1967) (holding that commissioners of Public Utilities Commission were not required to respond to discovery request regarding manner in which they arrived at their decision); *see also City of Colorado Springs v. District Court,* 184 Colo. 177, 181–82, 519 P.2d 325, 327 (1974) (disallowing testimony of city council members regarding zoning decision where no facts tended to support irregularity in proceedings). As discussed above, the BOE's review of a taxpayer's petition is quasi-judicial in character. We have recognized two policy reasons which support the application of the mental process rule to prohibit inquiry into the mental process by which a decision is reached in a quasi-judicial administrative proceeding:

First, there is a presumption of regularity and validity which attaches to proceedings conducted by administrative agencies. In the absence of evidence to the contrary, it is presumed that such agencies have properly discharged their official duties. Second, when administrative proceedings are quasi-judicial in character and resemble a judicial proceeding, the agency officials should be treated as the equivalent of judges.

*Hadley v. Moffat County Sch. Dist.,* 681 P.2d 938, 944 (Colo.1984) (citations omitted).[13]

██ In the context of judicial review of an administrative agency decision, the mental process rule is further supported by the fact that "[t]he court's function is to review the decision, not the reasoning underlying it; therefore, inquiry into the mental process of the decision-maker is irrelevant, inefficient and thus prohibited." *RLI Ins. Co. Group v. Superior Court,* 51 Cal.App.4th 415, 59 Cal. Rptr.2d 111, 125 (1996); *see also Pedernales Elec. Co–op., Inc. v. Public Util. Comm'n,* 809 S.W.2d 332, 342 (Tex.Ct.App.1991) (recognizing that thought processes or motivations of an administrator are irrelevant in

---

**13.** The fact that agency officials may be treated as the equivalent of judges is significant because judges cannot be subjected to scrutiny as to the mental process by which they reach their decisions. *See United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004–05, 85 L.Ed. 1429 (1941). Of course, Colorado's Open Meetings Law, *see* §§ 24-6-401 to -402, 10A C.R.S. (1988 & 1996 Supp.), with limited exception, provides

that agencies and officers subject to its provisions must conduct their business in public session. The Open Meetings Law, however, does not authorize, provide or require that a quasi-judicial officer may be called as a witness in a subsequent proceeding to explain or justify his, her, or the quasi-judicial body's decision, rationale, or decision-making process.

judicial determination as to whether an agency order is reasonably sustained by appropriate findings and conclusions that have support in the evidence).

■ The rules of evidence in the *de novo* valuation review hearing before the BAA "shall conform, to the extent practicable, with those in civil nonjury cases in the district courts." § 24-4-105(7), 10A C.R.S. (1988). The rationale underlying the mental process rule, a common law rule of evidence, is equally applicable in proceedings before the BAA as it is in proceedings before the district court. We therefore hold that a BOE board member may not be called in a proceeding before the BAA to explain a BOE decision, or how it was reached, in the absence of a clear showing of illegal or unlawful action, misconduct, bias, or bad faith on the part of the decision makers. There has been no such allegation in this case, and the mental process rule should have been applied to bar Knull's testimony.

The BOE and BAA argue that voluntary testimony by a BOE member to the BAA is not barred by the mental process rule. We disagree. It is inconsistent for the government to argue that quasi-judicial decision makers may resist being compelled to appear in a proceeding to explain their decision but may appear when the government views their testimony as useful. The rationale underlying the mental process rule applies to prohibit any party from probing into the process by which a quasi-judicial decision is reached.

In contrast to the assessor's evidentiary presentation role, the statute does not provide that a member of the BOE is to testify before the BAA or the district court regarding its decision or the value of the property under review. In the absence of such a provision, the question before us is whether Knull's testimony was admissible. The county attorney called Knull, a member of the BOE, as a witness to supplement the testimony of the county assessor's office. We hold that Knull's testimony was barred by the mental process rule.

The BAA argues that the mental process rule should not apply because, after 1992 amendments to the Colorado Constitution,[14] there is no longer any presumption that pending valuations are correct, *see* Colo. Const. art. X, § 20(8)(c), and, as a consequence, a BOE decision requires elucidation in proceedings before the BAA. Subsection 8(a), Colo. Const. art. X, § 20 states: "Regardless of reassessment frequency, valuation notices shall be mailed annually and may be appealed annually, *with no presumption in favor of any pending valuation.*" (Emphasis added.)

The mental process rule is based on the presumption of regularity and validity of quasi-judicial decisions and the integrity of the officers making them. *See Mountain States Tel. & Tel. Co. v. Public Utils. Comm'n,* 763 P.2d 1020, 1028 (Colo.1988); *Hadley,* 681 P.2d at 944. In the taxation context, the constitutional directive that there will be no presumption in favor of a pending valuation, Colo. Const. art. X, § 20, and the presumption that agency adjudicators have carried out their duties are not in conflict with each other and must not be confused. The fact that the BOE's decision has no presumptive effect, other than to cap the valuation, is not a basis for concluding that the mental process rule does not apply. Like the court of appeals, we cannot say that the BAA was uninfluenced by the testimony of the county commissioner, and we agree with the court of appeals that the BAA must make a redetermination of valuation on remand from the court of appeals.[15]

---

14. The 1992 amendment, "Amendment 1," Colo. Const. art X, § 20, provides at subsection (1) for the amendment to "take[ ] effect December 31, 1992 or as stated."

15. Our decision does not imply that the county loses any of the procedural rights it may have as a party litigant under section 24-4-105 of the Administrative Procedure Act in a taxpayer appeal to the BAA from a BOE decision, or that the

BOE is not properly named as a party to the BAA or district court proceeding initiated by a taxpayer. The BOE is a named defendant in the taxpayer appeal because its written decision (1) triggers the taxpayer's election to further appeal the property valuation for taxation and (2) sets the cap which the BAA or district court cannot exceed, *see* § 39-8-108(5)(a). However, the county's *de novo* evidentiary demonstration on the issue of the property's valuation primarily proceeds through the county assessor and must

## III.

Accordingly, we affirm the judgment of the court of appeals remanding this case to the BAA for redetermination of the valuation of Russell's residence, Schedule 2741.

rely on evidence other than the testimony of a county commissioner who acted as an adjudica-

tor in the BOE proceeding.