SUNBELT SERVICE CORPORATION,
Petitioner–Appellant,

v.

BOARD OF ASSESSMENT APPEALS
and the Board of County Commissioners of the County of Arapahoe, State of
Colorado, Sitting as the Arapahoe
County Board of Equalization, Respondents–Appellees.

No. 89CA1891.

Colorado Court of Appeals,
Div. IV.

Nov. 23, 1990.

Brega & Winters, P.C., Ronald S. Loser,
Diane B. Davies, Denver, for petitioner-appellant.

Peter Lawrence Vana III, Co. Atty.,
Richard F. Mutzebaugh, Sp. Asst. Co.
Atty., Littleton, for respondent-appellee
Arapahoe County.

Duane Woodard, Atty. Gen., Charles B.
Howe, Chief Deputy Atty. Gen., Richard H.
Forman, Sol. Gen., Larry A. Williams, First
Asst. Atty. Gen., Denver, for respondent-
appellee State of Colo.

Opinion by Judge CRISWELL.

The petitioner, Sunbelt Service Corp. (the landowner), seeks review of an order of the Board of Assessment Appeals (BAA) that approved the Arapahoe County Assessor's valuation of certain land owned by it. The landowner asserts that the assessor's evaluation was improper and that the BAA's order was defective because neither followed the requirements of § 39–1–103(14), C.R.S. (1990 Cum.Supp.). We agree and, therefore, reverse the BAA's decision and remand the cause to it for further consideration.

Republic Park is a subdivision located in Greenwood Village in Arapahoe County. The approved plat of that subdivision shows that it contains six lots of varying sizes, the largest (lot 3) containing 7.246 acres and the smallest (lot 5) containing 2.106 acres. The record does not indicate the identity of the party that owned the land when the plat was approved.

The landowner presently owns three of these lots (lots 3, 5 and 6) or 50% of all of the lots in the subdivision. Two of these three lots are contiguous while lot 3 is separated from the other two lots by an intervening lot (lot 4). The record does not establish when or under what circumstances the landowner acquired its title to these three lots.

Testimony at the hearing before the BAA disclosed that, while all of the streets that abut the subdivision have been improved and utility lines are present in those streets, there have been no utility hookups extended to any lot within the subdivision. Nor does the subdivision have any internal

streets. None of the lots within the subdivision has had any improvements erected on it, and none is used for any active purpose, except that lot 4 is used for the parking of vehicles, presumably for uses to the east of an abutting street, outside the subdivision itself. Each lot within the Republic Park subdivision, therefore, is "vacant land" within the meaning of § 39–1–103(14)(c)(I), C.R.S. (1990 Cum. Supp.). *See East Arapahoe Land Co. v. Board of Assessment Appeals*, —— P.2d —— (Colo.App. No. 89CA1817, November 8, 1990).

The assessor's valuation of the landowner's three lots was the result of the use of the market approach to appraisal. The assessor made a direct comparison of these three lots with other vacant sites in the neighborhood that had been sold at or near the pertinent valuation date. In reaching the approved evaluation, however, neither the assessor nor the BAA gave any consideration to any of the factors required to be considered by § 39–1–103(14)(b), C.R.S. (1990 Cum.Supp.).

## I.

Section 39–1–103(14)(b) requires assessing officers to give "appropriate consideration to the cost approach, market approach, and income approach" in arriving at the "actual value of vacant land." *See also* Colo. Const. art. X, § 3(1)(a); § 39–1–103(5)(a), C.R.S. (1990 Cum.Supp.) However, both the assessor and the landowner utilized only the market approach in arriving at their actual value figures, and we agree that neither the cost approach nor the income approach would be "appropriate" in this case. *See Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.*, 797 P.2d 27 (Colo.1990) (fn. 8, 9 and 12); *Montrose Properties, Ltd. v. Board of Assessment Appeals*, 738 P.2d 396 (Colo. App.1987).

When the market approach is used to determine the actual value of vacant land, § 39–1–103(14) requires the consideration of specific factors. That statute says:

"When using the market approach to appraisal in determining the actual value of vacant land, assessing officers *shall* take into account, but need not limit their consideration to, the following factors: The anticipated market absorption rate, the size and location of such land, the cost of development, any amenities, any site improvements, access, and use. When using anticipated market absorption rates, the assessing officers shall use appropriate discount factors in determining the present worth of vacant land until eighty percent of the *lots within an approved plat* have been *sold* and shall include all vacant land *in the approved plat*. The use of present worth shall reflect the anticipated market absorption rate for the *lots within such plat*, but such time period shall not generally exceed thirty years." (emphasis supplied)

In evaluating the three lots here, the assessing officer conceded that the lots were vacant and that they were "within an approved plat." She also did not dispute, either before the BAA or this court, that 80% of the lots had not been "sold." Nevertheless, she concluded that she was not required to consider the factors specified in § 39–1–103(14)(b). This was so, she asserted, because, while 80% of the lots within Republic Park had not been sold, 80% or more of the land within the "market area" within which the subdivision was located had been "developed."

However, neither the assessing officer's definition of "market area" nor a description of the area utilized in this case for determining whether 80% of the lots within that area had been "developed" was disclosed by the assessing officer's testimony. Likewise, there is no testimony defining what the assessing officer meant by the word "developed."

In contrast, the landowner presented expert testimony based on consideration of the factors set forth in § 39–1–103(14)(b). This testimony, if credited, would have resulted in a lower evaluation.

By accepting the assessing officer's valuation without further analysis, modification, or comment, it appears that the BAA accepted her approach to determining that valuation. In adopting this approach, how-

ever, both the assessing officer and the BAA failed to follow the statutory requirements.

If a statute's language is clear, it must be enforced; there is no need for further interpretation. *LaDuke v. C.F. & I. Steel Corp.*, 785 P.2d 605 (Colo.1990). And, we conclude that the plain language of § 39–1–103(14)(b) is not susceptible to the interpretation adopted by the assessing officer and approved by the BAA in this case.

The term "plat" has a common and accepted meaning, at least when that term is used with reference to "lots" within a plat. It means a "subdivision map which has been prepared for approval by appropriate governmental authorities." *Sellon v. Manitou Springs*, 745 P.2d 229 (Colo.1987). It is an instrument which, after such approval, is recorded with the clerk and recorder of the county in which the realty described thereon is located so as to reflect the interests in such property. Section 30–28–101, C.R.S. (1986 Repl.Vol. 12A). *See also* §§ 31–23–213, 31–23–214, and 31–23–215, C.R.S. (1986 Repl.Vol. 12B).

Thus, if 80% of the lots within a subdivision subject to an *approved plat* have not been sold, the assessor and the BAA *must* give consideration to each of the factors set forth in § 39–1–103(14)(b). This statute does not allow either the assessing officer or the BAA to substitute some general concept of a "market area" for the specific area included within the boundaries of the "approved plat" for the subdivision within which the vacant land is located.

Of course, these factors need not be applied to the exclusion of all others, and in arriving at an ultimate determination of the actual value of vacant land, the assessor and the BAA may also consider any other pertinent and appropriate information. If the statute applies, however, the statutory factors are also required to be considered by them.

Because both the assessor and the BAA failed properly to apply the governing statute, the BAA's decision must be reversed and this cause remanded to it for further proceedings. Upon remand, the BAA may, in its sound discretion, authorize the presentation of further evidence to it or, if it determines that the present record is sufficient for that purpose, it may simply adopt further findings consistent with the views set forth above.

II.

In light of our determination that this cause must be remanded to the BAA for further proceedings, we will not address the landowner's argument that the sales of other properties relied upon by the assessing officer should not have been considered by the BAA because of a lack of evidence of comparability. Because of the nature of the remand here, that issue may not be presented in, or may be rendered moot as a result of, the further proceedings required.

The order of the Board of Assessment Appeals is reversed, and this cause is remanded to it for further proceedings consistent with the views contained in this opinion.

MARQUEZ and DAVIDSON, JJ., concur.