**501 SOUTH CHERRY JOINT VENTURE, Petitioner–Appellant,**

v.

**ARAPAHOE COUNTY BOARD OF EQUALIZATION, and Board of Assessment Appeals, State of Colorado, Respondents–Appellees.**

**No. 89CA1886.**

Colorado Court of Appeals, Div. IV.

May 23, 1991.

As Modified on Denial of Motion for Clarification of Mandate June 27, 1991.

Rehearing Denied Aug. 29, 1991.

Gilbert Goldstein, P.C., Gilbert Goldstein, Englewood, Darrel L. Campbell, Denver, for petitioner-appellant.

Peter Lawrence Vana III, Arapahoe County Atty., Richard F. Mutzebaugh, Sp. Asst. County Atty., Littleton, for respondent-appellee Arapahoe County Bd. of Equalization.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, for respondent-appellee Bd. of Assessment Appeals of the State of Colo.

Opinion by Judge ROTHENBERG.

This appeal arises from a protest of a 1988 property tax valuation for three sepa-

rate, adjacent parcels of land in Arapahoe County owned by petitioner, 501 South Cherry Joint Venture (taxpayer). Respondent Colorado Board of Assessment Appeals (state board) approved the valuations of respondent Arapahoe County Board of Equalization (county board), and taxpayer pursued this appeal. We reverse the order of the state board and remand the cause for further proceedings.

## I.

Taxpayer is the owner of three parcels of real property identified as schedule numbers 1973–18–05–017 (parcel 17); 1973–18–2–05–018 (parcel 18); and 1973–18–2–05–019 (parcel 19). There is an eleven-story office building on portions of the property. More specifically, parcel 17 contains most of the office building's parking garage, parcel 18 contains a small portion of the parking garage and one-third of the office building, and parcel 19 contains two-thirds of the office building.

The Arapahoe County assessor's office established the actual 1988 value for assessment purposes as follows:

| Parcel | Land | Improvements | Total |
| --- | --- | --- | --- |
| 17 | $ 479,680.00 | $9,922,395.00 | $10,402,075.00 |
| 18 | $ 375,000.00 | –0– | $ 375,000.00 |
| 19 | $1,757,300.00 | $ 34,475.00 | $ 1,791,775.00 |

Thus, the combined actual value for parcels 17, 18, and 19 was $12,568,850.

Taxpayer protested all three valuations and, at the hearing before the state board, presented evidence that the actual value of the three parcels did not exceed $10,200,-000. Taxpayer's witness testified that the income approach to valuation was the only proper method for calculating this property's value since the three parcels constitute one working unit related to the operation of the office building.

Respondent's main witness was a representative from the county assessor's office. She testified that she considered the cost approach, the market approach, and the income approach as required by § 39–1–103(5)(a), C.R.S. (1982 Repl.Vol. 16B). Using the cost and market approach, she determined that the value of the three parcels was between $15 and $16 million. Using the income approach, the value was $10,-185,669.

The assessor testified that after considering all three approaches, she gave "most emphasis" to the cost and market approaches because the income approach was "not in the ball park." Finally, using a "market adjusted cost approach to value," the assessor ultimately determined that the total valuation was $12,568,850.

The state board approved the assessor's valuation.

## II.

■ Initially, we note that taxpayers who protest a property tax assessment bear the burden of proving the assessed valuation is incorrect. *Leavell–Rio Grande Central Associates v. Board of Assessment Appeals,* 753 P.2d 797 (Colo. App.1988).

■ It is the function of the state board to weigh the evidence and resolve conflicts. A decision of the state board may be set aside, however, if it is unsupported by competent evidence or reflects a failure to abide by the statutory scheme for calculating property tax assessments. *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27 (Colo.1990); *Leavell–Rio Grande Central Associates v. Board of Assessment Appeals, supra.*

■ In valuing property in accordance with constitutional and statutory requirements, the cost approach, market approach, and income approach must be considered by the assessor. *See* Colo. Const. art. X, § 3(1)(a). *See also* § 39–1–103(5)(a), C.R.S. (1982 Repl.Vol. 16B).

In *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra* our supreme court recognized, however, that "one or more of the three approaches may not be applicable in a particular case." *See also Montrose Properties, Ltd. v. Board of Assessment Appeals*, 738 P.2d 396 (Colo. App.1987). The nature of the property may rule out consideration of one or more approaches, or there may simply be insufficient data to allow all of the approaches to be used. *See Creekside at DTC, Ltd. v. Board of Assessment Appeals*, 811 P.2d 435 (Colo.App.1991).

In *Sonnenberg*, the court also noted that:

"[T]he general assembly has enacted § 39-1-103, prescribing standards and requirements for valuing property for assessment purposes, and § 39-2-109(1)(e), 16B C.R.S. (1989 Supp.) requiring the property tax administrator to prepare and publish manuals, appraisal procedures, and instructions concerning methods of appraising.... Under this authorization, the Division of Property Taxation of the Department of Local Affairs has issued a Land Valuation Manual further elaborating the methods and criteria to be employed in the appraisal process."

The Administrative and Assessment Procedures Manual (Manual) instructs the assessor, after considering all three approaches, and after analyzing all applicable approaches, to determine a final estimate of value. This is done by correlation.

"Correlation is the final process used to reach a final estimate of value. Each of the [three] approaches to value is re-examined and evaluated on the reliability of the information. The final estimate should be based on *the approach* that is best supported by factual data."

. . . .

"All applicable approaches must be considered and documented before a final estimate of value is determined. The assessor should examine each approach and decide *which one* best indicates the value of the property. The final estimate of value should be based on *the approach* that is best supported by factual and reliable data." 2 Administrative and Assessment Procedures Manual § VII at 7.9 and Addendum 7B.23 (1990). (emphasis added)

The principle of correlation is also discussed in 7 P. Rohan & M. Reskin, *Nichols on Eminent Domain* § 4.05 (1990):

"The final step in the appraisal process is the correlation of the three indications of value derived by the cost, income, and market data approaches.

. . . .

"*The appraiser does not obtain his final estimate of value by averaging* the three individual indications of value arrived at by means of the cost, market data, and income approaches. The appraiser instead takes the three preliminary value estimates and examines the spread between the minimum and maximum figures. He places the most emphasis on the approach which appears to be the most reliable as an indication of the answer to the specific appraisal problem. Then he *tempers this estimate in accordance with his judgment as to the degree of reliance to be placed on the other two indications of value.*" (emphasis added)

Some authorities refer to the final process as reconciliation rather than correlation. In American Institute of Real Estate Appraisers, *The Appraisal of Real Estate*, 8th ed. (1983), the authors state:

"The final analytical step in the valuation process is an appraiser's reconciling the indications of value into a single dollar figure or into a range in which the value will most likely fall....

"When all three approaches have been used, the appraiser examines the spread among the three separate indications. A wide spread may indicate that one or more of the approaches is not applicable to the appraisal problem. The appraiser always considers the relative dependability and applicability of each approach in reconciling the value indications into a final estimate of defined value."

■ In summary, *Sonnenberg* requires consideration of all three approaches but recognizes that the nature of taxpayer's property or the absence of data may prevent the application of one or more approaches. After all applicable approaches are considered, the Manual concludes that there will normally be one approach which best indicates the final estimate of value for taxpayer's property, that is, one approach will be "best supported by factual and reliable data."

After determining the best approach, the assessor then applies the principle of correlation or reconciliation to find the final estimate of value. This is not averaging. It is a systematic process by which the assessor emphasizes the most reliable approach and then, using his or her judgment and experience, tempers or adjusts that estimate of value based on the degree of reliance, if any, that the assessor has placed on the other applicable approaches to value. Through correlation or reconciliation, the assessor uses all applicable approaches as a check against each other. *Nichols on Eminent Domain, supra.*

### III.

■ The taxpayer first contends that the assessor erroneously allocated taxpayer's improvements. We agree.

It is undisputed that taxpayer's office building is not located on parcel 17; rather, parcel 17 contains most of the parking garage. Accordingly, the assessor unquestionably erred in assigning 100% of the value of taxpayer's office building as an improvement attributable solely to parcel 17. Similarly, the values of the improvements attributable to the other two parcels were also wrong.

### IV.

■ The taxpayer's second contention is that the assessor erred in the manner in which the value of taxpayer's property was determined. Again, we agree.

The assessor began her appraisal using the income method to calculate the value of *all three of taxpayer's parcels and all improvements.* The valuation arrived at was $10,185,669. However, the assessor assigned that total value solely to parcel 17.

Next, using the market approach, the assessor separately valued parcel 18 at $375,000 and parcel 19 at $1,757,300. Those values were added to the $10,402,075 valuation already assigned to parcel 17. In effect the assessor valued parcels 18 and 19 twice.

■ There is additional confusion here because the assessor testified that she applied a "market adjusted cost approach to value" to arrive at the final estimate of value. The evidence however, was that under both the market and cost approaches, the value was almost $16,000,-000, in contrast to a value of $10,402,075 under the income approach. There is no way to reconcile the assessor's final estimate of value ($12,568,850) with the cost or market approach, nor was the assessor's testimony consistent with the use of those approaches.

The assessor's testimony included the following:

"(Question by taxpayer's attorney) Now you value the property, the entire property, all three parcels at $10,402,075 by the capitalization of income method?

"(Answer) Yes.

"(Question) All right, now you assigned that entire value to Parcel 17, didn't you?

"(Answer) Yes.

"(Question) After having assigned that entire *income approach* value to Parcel 17, then the assessor's office assigned a land value of $375,000 to Parcel 18. (emphasis added)

"(Answer) Yes.

"(Question) You then assigned a value of $1,791,775 to Parcel 19.

"(Answer) Yes.

"(Question) But Parcel 19 doesn't have any separate income, isn't that correct?

"(Answer) That is correct.

"(Question) All of the income was attributable to the $10,402,075 which you assigned to Parcel 17.

"(Answer) Yes."

The assessor's testimony is contradictory because she actually used the income and market approaches but testified that she used the cost and market approaches. Further, there is no evidence in the record of any correlation of the applicable approaches by the assessor. Based on this record, we conclude that the assessor's determination of value was arbitrary and unsupported by competent evidence. *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra.*

## V.

■ Taxpayer's final contention is that the only proper method of valuation here is the income approach. We disagree.

Taxpayer finds some support for its position in *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra,* where our supreme court noted that:

> "*[T]he income approach is a common method for calculating the value of commercial properties, especially* apartment buildings, *office buildings* and shopping centers. It generally involves calculating the income stream (rent) the property is capable of generating, capitalized to value at a rate typical within the relevant market." (emphasis added)

*See also Creekside at DTC, Ltd. v. Board of Assessment Appeals, supra.*

Thus, although we agree that the income approach is an important method for valuing office buildings and may well be the best approach here, we nevertheless decline to hold as a matter of law that any particular approach must be used under the statutory scheme. Rather, the county assessor and the state board should determine the proper valuation of taxpayer's property after appropriate consideration of the three approaches designated by the General Assembly, *see* § 39-1-103(5)(a), C.R.S. (1982 Repl.Vol. 16B), after proper analysis of the applicable approaches, and after systematic correlation to reach a final estimate of value. *See Manual* § VII at 7.9 and Addendum 7B.23. *See also The Appraisal of Real Estate, supra.*

## VI.

In view of our finding that there is no competent evidence in the record to substantiate the valuation of $12,568,850, the order of the Board of Assessment Appeals is reversed, and the assessment is vacated, and the cause is remanded to the Board for remand to the Arapahoe County Board of Equalization for new proceedings and entry of a new assessment consistent with the views expressed in this opinion.

METZGER and DAVIDSON, JJ., concur.