TRANSAMERICAN REALTY CORPORATION, d/b/a Cuchara Valley Resort, Petitioner–Appellant,

v.

Don CLIFTON and Curtis Wells, in their official capacity as members of the Board of Assessment Appeals of the State of Colorado; Board of Assessment Appeals of the State of Colorado; Xavier E. Sandoval, William Reiners and Neal J. Cocco, in their official capacity as members of the Board of County Commissioners, Huerfano County, Colorado, sitting as the County

Board of Equalization, Huerfano County, Colorado; Board of Equalization of the County of Huerfano; Board of County Commissioners of the County of Huerfano, sitting as the Huerfano County Board of Equalization; and Virginia M. Aragon, in her official capacity as the Huerfano County Assessor, Respondents–Appellees.

No. 90CA1544.

Colorado Court of Appeals,
Div. II.

Aug. 29, 1991.

Faegre & Benson, Leslie A. Fields, Denver, for petitioner-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., and Maurice G. Knaizer, Deputy Atty. Gen., Denver, for respondents-appellees Don Clifton, Curtis Wells and Bd. of Assessment Appeals.

Garrett Sheldon, Walsenburg, for respondents-appellees Xavier E. Sandoval, William Reiners, Neal J. Cocco, Bd. of Equalization, Bd. of County Com'rs and Virginia M. Aragon.

Opinion by Judge SMITH.

Plaintiff, Transamerican Realty Corp., (taxpayer) appeals an order of the Board of Assessment Appeals (Board) regarding valuation of its property for assessment of

1989 property taxes. We reverse and remand with directions.

The property at issue is part of the Cuchara Valley Ski Resort in Huerfano County. It was initially valued by the County Assessor at $921,185, of which $100,000 was attributable to the land and the remainder to two improvements constructed thereon. Taxpayer protested this valuation before the County Board of Equalization (County Board), which reduced the properties' land value to $84,070 and the improvements to $720,510, for a total of $804,580. Dissatisfied, taxpayer then petitioned the Board, pursuant to § 39–8–108, C.R.S. (1990 Cum.Supp.), for further review, contending that the properties' actual value was $312,000, $38,600 of which was attributable to the land.

The Board, following the presentation of evidence by the assessor and taxpayer's expert, denied taxpayer's petition. The gravamen of the Board's denial was its conclusion that:

"The Huerfano County Assessor properly used the applicable state statutes and the division of property taxation manuals and guidelines in valuing the subject property for the tax year 1989."

I.

Taxpayer contends that the Board's conclusion is unsupported by the evidence in the record. We agree.

■ The essence of taxpayer's argument is that the evidence discloses that the assessor failed to comply with the statutory scheme for calculating property tax assessments set forth in § 39–1–103(5)(a), C.R.S. (1990 Cum.Supp.). This statute provides in relevant part:

"All real ... property shall be appraised and the actual value thereof for property tax purposes determined by the assessor of the county wherein such property is located. The actual value of such property ... shall be that value determined by appropriate consideration of the cost approach, the market approach, and the income approach to appraisal. The assessor shall consider and document all

elements of such approaches that are applicable prior to the determination of actual value...."

In sum, the statute requires that if an approach to value is applicable, it must be given appropriate consideration by the assessor. *Creekside at DTC, Ltd. v. Board of Assessment Appeals,* 811 P.2d 435 (Colo. App.1991). Moreover, the assessor must consider and document all elements of applicable approaches. *Montrose Properties, Ltd. v. Board of Assessment Appeals,* 738 P.2d 396 (Colo.App.1987).

Viewing the evidence in the record in light of the foregoing, we conclude, for a number of reasons, that the Board's determination of the assessor's compliance with this statutory scheme was in error.

■ First, the record discloses that, contrary to § 39–1–103(5)(a), the assessor totally failed to consider and document an "applicable" approach in determining the actual value of the property. Specifically, the record reveals that, while the assessor admitted that the income approach was "applicable" in valuing the property, time constraints in completing a major reappraisal of the entire county precluded him from requesting information from the taxpayer beyond that submitted with the declaration schedule. Time constraints, however, do not excuse the statutory mandate that all applicable approaches to valuation be given appropriate consideration. *See E.E. Sonnenberg & Sons, Inc. v. Board of Assessment Appeals,* 768 P.2d 748 (Colo. App.1988), *rev'd in part on other grounds,* 797 P.2d 27 (Colo.1990). *See also* Colo. Const. art. X, § 3.

The Board relies on *Montrose Properties, supra,* to argue that appropriate consideration of the income approach was given since the assessor testified that taxpayer's declaration schedule contained insufficient data to calculate value under this approach. The critical distinction, however, is that, here, testimony did not establish, as in *Montrose Properties,* that the adequate data was not available; rather, the assessor here testified merely that he had not sufficient time to gather the data.

■ Second, the record discloses that the assessor failed to document the elements of

either the market or the cost approaches from which he fashioned his ultimate determination of actual value.

As to the market approach, the assessor testified that:

"There were 24 sales of commercial buildings in the time frame that we had to collect sales data from and we classified those sales by *construction* and *building type* and *current use* and extracted from that a solid price per square foot from the building. And we built those values into our computer system also in consideration of the cost approach ... and those figures were then calculated as we put the individual information in for each commercial property that had not sold." (emphasis added)

The assessor, however, was unable at the hearing to identify further the 24 sales or provide any information in terms of their critical characteristics, such as their location, size, age, and use, or the adjustments to these characteristics which were made to reflect their comparability to the taxpayer's property.

Indeed, to a direct query whether he took the comparable sales and made certain adjustments to reflect their comparability to the subject property, the assessor replied that he had *not* done so, and, in explanation, he testified:

"It goes back to the basic structure of our computerized appraisal system and analyzing sales deriving from that sold price per square foot building that is built into our computer tables with the Marshall Swift Valuation Service as a cost approach cross reference, and then putting in the specific data for each individual property and calculating a value for that property, as indicated by this information that's been built into the computer table."

Regarding the replacement cost approach, the assessor testified that the Marshall Swift Valuation Service was used in developing a cost-driven computer appraisal program, adjusted "accordingly" for time and location. And, the assessor relied, again, almost exclusively, on the computerized appraisal system to describe these adjustments and to explain how the Marshall Swift Valuation Service was employed.

Finally, as the primary documentation of his consideration of these approaches, the assessor submitted two copies of the appraisals generated by the computer. However, the facts and figures that were entered into the computer were not presented or made available.

We conclude that, viewed in its entirety, the assessor's evidence is, simply, an ultimate conclusion. His failure to present any evidence of the facts on which the conclusion was based does not constitute compliance with the statutory mandate that the assessor document "all elements" of applicable approaches to value.

Likewise, the evidence fails to identify the various judgment decisions which the assessor must make under either the market data or replacement cost approaches to arrive at his ultimate determination of actual value. For example, the brief summary "documentation" presented by the assessor fails to disclose the comparability elements in his market data approach or the various considerations relating to quality of construction in the replacement cost approach. Accordingly, it is difficult, if not impossible, to evaluate critically the validity of the assessor's analysis, a result which we conclude is contrary to the general assembly's express intent under the language of § 39–1–103(5)(a).

The Board relies on the presumption of correctness which attaches to the assessor's official acts. *See Citizens' Committee for Fair Property Taxation v. Warner*, 127 Colo. 121, 254 P.2d 1005 (1953). However, we conclude that the presumption of correctness has been rebutted here in that sufficient evidence was presented at the hearing before the Board to demonstrate that the assessor's valuation resulted from the assessor's failure to comply with necessary statutory requirements.

■ In light of the foregoing, we hold that the evidence discloses fundamental errors in the assessor's valuation of taxpayer's property under the statutory scheme for calculating property taxes as set forth in § 39–1–103(5)(a).

We are mindful that the reviewing court may not set aside a decision of the Board unless the decision is unsupported by competent evidence. *E.E. Sonnenberg & Sons, Inc. v. Board of Assessment Appeals, supra.* However, inasmuch as the record here discloses not only the assessor's failure to give appropriate consideration to an "applicable approach" to appraisal, but also his further failure to document both facts and judgment decisions, the essential elements of the cost and market approaches applied in valuing the subject property, we hold that this difficult standard has, indeed, been met.

## II.

Under the circumstances, we find it unnecessary to address taxpayer's remaining contentions of error.

Accordingly, the order of the Board is reversed, and the cause is remanded with directions to the Board to reconsider its order based upon the present record and to make a new determination consistent with the views expressed herein.

CRISWELL and SILVERSTEIN,* JJ., concur.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).