**BOARD OF ASSESSMENT APPEALS, Petitioner,**

v.

**Richard F. SAMPSON and Teller County Board of Equalization, Respondents.**

No. 03SC451.

Supreme Court of Colorado.

Jan. 10, 2005.

*As Modified on Denial of Rehearing* Jan. 31, 2005.

200

Ken Salazar, Attorney General, John D. Baird, First Assistant Attorney General, Lisa R. Brenner, Assistant Attorney General, Denver, for Petitioner.

Sparks Willson Borges Brandt & Johnson, P.C., Stephen A. Hess, Colorado Springs, for Respondents.

MARTINEZ, Justice.

We granted certiorari in this real property tax case to determine whether the court of appeals assigned the appropriate burden of proof to a taxpayer in a proceeding before the Colorado Board of Assessment Appeals ("BAA"). *Sampson v. Teller County Bd. of Equalization,* 80 P.3d 861, 862 (Colo.App. 2003). In *Sampson,* the court of appeals held that the burden of proof in the BAA proceedings is on the taxpayer to establish "an appropriate basis under the market approach for his claims for an alternative reduced valuation of the subject property for the 2001 tax year." 80 P.3d at 862. Because the court of appeals' holding departs from established precedent that a taxpayer must only prove an assessment is incorrect to pre-

vail at a BAA proceeding, we reverse and remand with directions.

## I. Facts and Proceedings

Taxpayer, Richard F. Sampson, owns a mobile home and the ten-acre parcel of real property on which it sits in Teller County, Colorado. The mobile home is a 1971 double-wide manufactured home consisting of approximately 1,104 square feet, three bedrooms, and one-and-one-half bathrooms. The home sits on a non-permanent cinder block foundation.

In August 2001, the Teller County Assessor's office issued a Notice of Valuation for Sampson's property indicating a market value of $93,951.00. Sampson did not protest this initial valuation.

After this notice was sent, there were additional mobile home sales in Teller County to provide further sales analyses in the valuation process of mobile home properties. On this basis, the Board of Equalization ("BOE") ordered the Teller County Assessor ("assessor") to perform new valuations for assessment of mobile homes. The assessor revalued Sampson's mobile home and fixed the market value of Sampson's property at $137,919.00.

Sampson protested this revised valuation to the BOE, which affirmed. Sampson then appealed to the BAA, challenging the BOE's decision to uphold the revised valuation and seeking to reinstate the initial $93,951.00 valuation previously assigned to the property.

At the BAA hearing, Sampson appeared pro se via telephone conference call. Sampson maintained the property had been overvalued because the home does not have a permanent foundation and is located on a privately maintained road while the comparable sales used by the BOE were of newer mobile homes on permanent foundations located approximately 25 miles away. He did not, however, introduce evidence of comparable sales of property.

The BAA concluded Sampson "presented sufficient probative evidence and testimony to prove that the subject property was incorrectly valued for the tax year 2001." It explained that: (1) There exists a basis for the differences in value for mobile homes situated on permanent foundations; mobile homes situated on permanent foundations can obtain favorable financing in the market place; (2) the comparable sales presented by the BOE did not accurately compare to Sampson's property; (3) the BOE did not present evidence establishing that older mobile homes not situated on a permanent foundation, like Sampson's, appreciated to the same level as the comparables it used; (4) it disagreed with the comparable sales and adjustment calculations presented by the BOE; and (5) the assessor's office did not address all factors affecting the valuations for mobile homes of Sampson's type in this area.

The BAA ordered the BOE to reduce the 2001 actual value of Sampson's property to the amount of the initial valuation, $93,951.00, with $63,553.00 allocated to land and $30,398.00 allocated to improvements.

Teller County appealed. In a published opinion, the court of appeals reversed. The court of appeals noted that, although the BOE's valuation was no longer presumptively correct in light of article X, section 20 of the Colorado Constitution, (the Taxpayer's Bill of Rights, or "TABOR"), the taxpayer nevertheless had the burden of proof. The court of appeals held the taxpayer had the burden of proof in the BAA proceeding to establish an appropriate basis for an alternative reduced valuation of the subject property under the applicable statutory scheme. *Sampson*, 80 P.3d at 862.

Applying this burden of proof, the court held the BAA erred in reducing the subject property's valuation to $93,951.00. *Id.* Specifically, it concluded that, because the BAA rejected all valuation evidence presented, there existed no competent evidence to support the valuation and, accordingly, the taxpayer failed to meet his burden of providing an appropriate basis for a reduced valuation. *Id.*

The BAA appealed. We granted certiorari to review the court of appeals' holding.

## II. Analysis

The parties do not dispute that a taxpayer challenging an assessment has the burden of

proof at a BAA proceeding. *See* Rule 14(a), 8 C.C.R. 1301–1 (1997). The statutes regulating appeals of valuations by county assessors do not, however, address the taxpayer's specific standard required to meet the burden of proof at the BAA proceeding.

The BAA argues a taxpayer protesting an assessment in a BAA proceeding only has the burden to prove by a preponderance of the evidence that the assessment of the taxpayer's property is incorrect and need not prove an alternative valuation. We agree.

We first review the statutory scheme regulating taxpayer proceedings and the valuation of mobile homes. We then turn to the taxpayer's burden of proof and conclude a taxpayer must only prove, by a preponderance of the evidence, that an assessment is incorrect to prevail at a BAA proceeding. Finally, we determine that article X, section 20, of the Colorado Constitution does not affect this burden of proof.

## A. Statutory Scheme

### 1. Taxpayer Protest Procedures

Article X, section 3(1)(a), of the Colorado Constitution requires that valuations for assessment be based on appraisals by assessing officers. *See also* § 39–5–104, C.R.S. (2004). Once the assessor determines the actual value of the property and issues a Notice of Valuation, a taxpayer has the right to protest the assessor's valuation. § 39–5–122, C.R.S. (2004). If the assessor denies a taxpayer's protest, the taxpayer may petition the county BOE. § 39–8–106, C.R.S. (2004).

■ The BOE hears and considers all testimony and exhibits produced by the parties "with no presumption in favor of any pending valuation." *See* § 39–8–107(1), C.R.S. (2004). The BOE has the authority to "raise, lower, or adjust any valuation for assessment appearing in the assessment roll." § 39–8–102(1), C.R.S. (2004); *see Arapahoe County Bd. of Equalization v. Podoll*, 935 P.2d 14, 16 (Colo.1997). This authority includes the power to order the county tax assessor to revalue all properties within a municipality based on a recognized disparity in land values between the municipality and surrounding properties. *Gilpin County Bd. of Equal-*

*ization v. Russell*, 941 P.2d 257, 262 (Colo. 1997).

The assessor must make available, at least two days prior to the hearing, all data used to support the assessor's valuation on taxpayer request. *See* § 39–8–107(3), C.R.S. (2004); *Russell*, 941 P.2d at 262. Either the tax assessor or the assessor's representative must be present at the BOE hearing and produce evidence regarding the protested valuation. *See* § 39–8–107(1); *Russell*, 941 P.2d at 262.

A taxpayer dissatisfied with a BOE decision denying a petition in whole or in part may submit the case to arbitration, *see* 39–8–108.5, C.R.S. (2004), or appeal the valuation set by the assessor or the adjusted BOE valuation to either the BAA or the district court of the county for a trial de novo. *See* § 39–8–108(1), C.R.S. (2004). Both the taxpayer and the assessor are parties to the district court or BAA proceeding and have the right to present evidence. *See* § 39–8–107(1); *Russell*, 941 P.2d at 263.

The BAA is comprised of three members. All members of the BAA must be experienced in property valuation and taxation and be registered, licensed, or certificated pursuant to sections 12–61–700 to –718, C.R.S. (2004), which govern real estate appraisers. § 39–2–123, C.R.S. (2004). Likewise, Rules 2.1 to 2.4, 4 C.C.R. 725–2 (2003), of the Rules of the Colorado Board of Real Estate Appraisers set forth the requirements for registration, licensure or certification as a real estate appraiser. These rules require real estate appraisal education programs emphasizing basic appraisal principles and procedures. *See id.* The education must cover a variety of topics, including legal considerations in appraisal, economic principles, real estate markets and analysis, the valuation process, property description, and the sales comparison approach. *See id.*

■ The BAA or district court can review the BOE's decision de novo. *Russell*, 941 P.2d at 261; § 39–8–108(1). The BAA may not impose a valuation on the property in excess of that set by the BOE. § 39–8–108(5)(a), C.R.S. (2004). With the exception of the cap placed by the BOE on subse-

quent valuation, the de novo proceeding before the BAA or district court "is commonly understood as a new trial of an entire controversy." *Russell*, 941 P.2d at 263 (internal quotation and citation omitted). Thus, any evidence that was or could have been presented in the BOE proceeding may be presented to the BAA for a new and separate determination. *Id.*

## 2. Valuation of Mobile Homes

A mobile, or "manufactured," home is: "a preconstructed building unit ... without motive power designed and commonly used for residential occupancy by persons in either temporary or permanent locations." § 38–29–103, C.R.S. (2004). Colorado's General Assembly placed an ad valorem tax on mobile homes in response to the rapid evolution of mobile homes into residential housing of a substantially permanent and immobile nature. *American Mobilehome Ass'n, Inc. v. Dolan*, 191 Colo. 433, 435, 553 P.2d 758, 760 (1976).

■ Accordingly, mobile homes are treated as real property for tax purposes. Mobile homes can also be converted from personal property to real property for all purposes. *Leader Fed. Bank for Sav. v. Saunders*, 929 P.2d 1343, 1353 (Colo.1997). The Titles to Manufactured Homes Act, sections 38–29–101 to –143, C.R.S. (2004), provides that a manufactured home becomes real property when it is permanently affixed to the ground, i.e., is situated on a permanent foundation. *Saunders*, 929 P.2d at 1346. This conversion process to real property requires purging the title to the mobile home. *Id.* To "purge" a title, the county assessor's office mails the original certificate of title to the Colorado Division of Motor Vehicles where the mobile home is removed from its records. *Id.*

The Colorado Constitution, article X, section 3, sets forth the basic framework for ad valorem taxation of real and personal property and depends on a calculation of the "actual value" of the property to be taxed. *Russell*, 941 P.2d at 260 (citations omitted) (reviewing the statutory process of property valuation). Article X requires that:

The actual value of all real ... property ... shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments ....

Colo. Const. art. X, § 3(1)(a).

■ "Actual value" is synonymous with market value. *See City & County of Denver v. Bd. of Assessment Appeals*, 848 P.2d 355, 360 (Colo.1993). The assessor must determine the actual value of real property "solely by consideration of the market approach to appraisal." § 39–1–103(5), C.R.S. (2004); *see also* Colo. Const. art. X; § 39–5–203, C.R.S. (2004).

■ Market value has been described as "what a willing buyer would pay a willing seller under normal economic conditions." *Bd. of Assessment Appeals v. Colo. Arlberg Club*, 762 P.2d 146, 151 (Colo.1988). Thus, the market approach involves analyzing sales of comparable properties in the market. *E.E. Sonnenberg & Sons, Inc.*, 797 P.2d at 31 n. 12 (citing *Colo. Arlberg Club*, 762 P.2d at 151). Relevant to analysis of sales of comparable properties in the market is the consideration of the property's specific attributes. *Podoll*, 935 P.2d at 17–18. Section 39–1–103(8)(a)(I), C.R.S. (2004) "makes clear that appraisals *must* reflect due consideration of the comparability of such sales, including the extent of the similarities and dissimilarities among properties compared for assessment purposes." *E.E. Sonnenberg & Sons, Inc.*, 797 P.2d at 31 (emphasis added).

■ This language implies that compliance with these procedures and instructions is necessary to accomplish the state goal of achieving fair and uniform valuation for assessment of real property. *See* Colo. Const. art. X, § 3; *cf. Resolution Trust Corp. v. Bd. of County Comm'rs*, 860 P.2d 1383, 1385–86 (Colo.App.1993) (reaching this conclusion in context of statute governing assessment of vacant land). The appropriate factors to be considered by the BAA de novo, and the county assessor in the first instance, must comport with the same statutory requirements. *E.E. Sonnenberg & Sons, Inc.*, 797 P.2d at 34 n. 23.

## B. The Taxpayer's Burden of Proof at BAA Proceedings

We begin our discussion of the taxpayer's burden of proof in a BAA proceeding with a review of case law stating that a taxpayer has the burden of proving that an assessment is incorrect. We then consider the historical origins of the burden of proof in the context of property taxation. Specifically, we consider the traditional presumption that an agency complies with its statutory mandate and this presumption's relationship to the taxpayer's burden of proof. We conclude the taxpayer's burden of proof derives from this presumption and requires a taxpayer to demonstrate that an assessment is incorrect. We further conclude that article X, section 20, which eliminates the presumption favoring a pending valuation, is consistent with this burden of proof.

### 1. Case Law

A taxpayer's burden of proof in a BAA proceeding is well-established: a protesting taxpayer must prove that the assessor's valuation is incorrect by a preponderance of the evidence in a de novo BAA proceeding. We recently stated this burden of proof in *Arapahoe County Board of Equalization v. Podoll*, 935 P.2d 14, 18 (Colo.1997). Prior to *Podoll*, we stated that the taxpayer has the burden of proving the, invalidity of an assessment. *A.B. Hirschfeld Press, Inc. v. City & County of Denver*, 806 P.2d 917, 920 (Colo. 1991).

Likewise, the court of appeals has consistently stated that the taxpayer's burden of proof is to establish that the assessment is incorrect. *Gyurman v. Weld County Bd. of Equalization*, 851 P.2d 307, 310 (Colo.App. 1993); *Resolution Trust Corp.*, 860 P.2d at 1385–86; *Snyder Family Trust v. Adams County Bd. of Equalization*, 835 P.2d 579, 580 (Colo.App.1992); *Cherry Hills Country Club v. Bd. of County Commissioners*, 832 P.2d 1105, 1107 (Colo.App.1992); *117th Assoc. v. Jefferson County Bd. of Equalization*, 811 P.2d 461, 463 (Colo.App.1991) (protesting taxpayer must prove by a preponderance of the evidence that assessors' valuation is wrong); *501 South Cherry Joint Venture v. Arapahoe County Bd. of Equalization*, 817 P.2d 583, 585 (Colo.App.1991); *Arapahoe P'ship v. Bd. of County Comm'rs*, 813 P.2d 766, 768 (Colo.App.1990); *Leavell–Rio Grande Central Assoc. v. Bd. of Assessment Appeals*, 753 P.2d 797, 799 (Colo.App.1988); *County Bd. of Equalization v. Bd. of Assessment Appeals*, 743 P.2d 444, 446 (Colo.App. 1987); *Honeywell Info. Sys. v. Bd. of Assessment Appeals*, 654 P.2d 337, 340 (Colo.App. 1982).

Further, cases not explicitly stating the burden of proof have implicitly required the taxpayer to establish that the assessment is incorrect. In *Majestic Great West Savings & Loan Ass'n v. Reale*, 30 Colo.App. 564, 566–67, 499 P.2d 644, 645–46 (1972), clear and convincing evidence showed that the assessment was incorrect because the assessor failed to consider the two most relevant approaches in valuing the subject property. Similarly, in *Sunbelt Service Corp. v. Board of Assessment Appeals*, 802 P.2d 1199, 1199 (Colo.App.1990), the taxpayer asserted, and the court of appeals agreed, that the assessor's evaluation of his land was improper and the BAA's order defective because both failed to follow the statutory requirements.

The burden of proving incorrectness corresponds to and derives from the historical presumption, which was rebuttable, that an assessor's ascertainment of value for taxation was correct. *See, e.g., Colo. & Utah Coal Co. v. Rorex*, 149 Colo. 502, 507, 369 P.2d 796, 799 (1962).

As a general notion, a rebuttable presumption lends weight to particular inferences from a stated set of facts, but can be overcome by the party against whom the presumption operates. *United Blood Serv. v. Quintana*, 827 P.2d 509 (Colo.1992). Colorado Rule of Evidence 301, which deals with rebuttable presumptions, states:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet this presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion,

which remains throughout the trial upon the party on whom it was originally cast.

A rebuttable presumption is different from a "burden of proof" applicable to a claim in that the imposition of a presumption on an evidentiary point neither relieves a party nor imposes on a party the ultimate burden of proof. *See* CRE 301, cmt 1; *see also City & County of Denver v. DeLong,* 190 Colo. 219, 223, 545 P.2d 154, 157 (1976) (presumption does not eliminate the need to establish a prima facia case); *American Ins. Co. v. Naylor,* 101 Colo. 34, 37, 70 P.2d 349, 352 (1937) (rebuttable presumptions do not shift the burden of persuasion).

Under section 137–2–35, 6 C.R.S. (1963), the rebuttable presumption that an assessment was correct required a taxpayer to prove by clear and convincing evidence that an assessment was manifestly excessive, fraudulent, or oppressive. *See* § 137–2–35 ("the court shall not review, or give relief against an assessment ... unless it shall appear manifestly fraudulent, erroneous or oppressive"); *Colo. & Utah Coal Co.,* 149 Colo. at 514, 369 P.2d at 802; *Citizens' Committee v. Warner,* 127 Colo. 121, 131, 254 P.2d 1005, 1012 (1953). A taxpayer who met this burden of proof also successfully rebutted the presumption of correctness. *See Colo. & Utah Coal Co.,* 149 Colo. at 508, 369 P.2d at 799 (taxpayer prevailed on showing that obsolescence, a factor relevant to the assessment, was manifest and affected the value of subject property).

In 1964, the General Assembly repealed section 137–2–35 and reenacted section 137–8–6, 6 C.R.S. (1963). *Majestic Great W. Savings,* 30 Colo.App. at 566, 499 P.2d at 645–46. Section 137–8–6 did not retain the "fraudulent, erroneous, or oppressive" standard. *Id.*

In *Majestic Great West Savings,* the court of appeals recognized that, while the taxpayer no longer had the burden of proving that an assessment was manifestly excessive, fraudulent, or oppressive, section 137–8–6 did not supply an alternative burden of proof. *Id.* However, there still existed a rebuttable presumption that the assessment was correct. *Id.*

In the absence of a statutorily-supplied burden of proof, *Majestic* suggested a burden of proof corresponding to the presumption that an assessment is correct. As noted above, the trial court found that clear and convincing evidence was the degree of proof to overcome the presumption that an assessment was correct. *Majestic,* 30 Colo.App. at 566, 499 P.2d at 646. The court of appeals agreed with the trial court that, under this standard, the taxpayer was entitled to a redetermination of the subject property's value because the assessor failed to comply with the statute. *Id.* at 567, 499 P.2d at 646.

In 1971, the standard of proof changed from clear and convincing evidence to preponderance of the evidence pursuant to the enactment of section 52–1–128, 12 C.R.S. (1963) (recodified as section 13–25–127 in 1973). Thereafter, courts explicitly adopted the burden of proof implied in *Majestic*— that the taxpayer had the burden of proving the assessment was incorrect—but without explaining its relationship to the presumption. For example, the court in *Honeywell Information Systems,* 654 P.2d at 340, held, without reference to the presumption of correctness, that the taxpayer had the burden of proving by a preponderance of evidence that the assessment is incorrect in a tax protest. *See also A.B. Hirschfeld Press, Inc.,* 806 P.2d at 920; *C.A. Staack P'ship v. Bd. of County Comm'rs,* 802 P.2d 1191, 1193 (Colo.App. 1990); *Leavell–Rio Grande Cent. Assoc.,* 753 P.2d at 799.

It is true that some courts have expressed that the burden of proof is to rebut the presumption of correctness: "[I]n a de novo hearing before the BAA, the burden of proof is on the taxpayer to rebut [the presumption that the valuation made by a county assessor is correct]." *Snyder Family Trust,* 835 P.2d at 580; *see also Gyurman,* 851 P.2d at 310; *117th Assoc.,* 811 P.2d at 463; *County Bd. of Equalization,* 743 P.2d at 446. We recently stated in *Podoll,* 935 P.2d at 18, that the taxpayer had the burden of proving incorrectness to rebut the presumption of correctness, despite the fact that article X, section 20 eliminated the presumption favoring a pending valuation. § 39–8–108(6); Colo. Const. art. X, § 20(8)(c); *Russell,* 941 P.2d at 263; *see also County Bd. of Equalization,*

743 P.2d at 446 (evidence rebutting presumption sufficient for taxpayer to ultimately prevail). However, these formulations of the burden of proof in relation to the presumption do not alter our conclusion that the burden is to show incorrectness.

Thus, the relevance of the presumption is limited to its historical relationship to the taxpayer's burden of proof. That is, because these cases do not distinguish between the burden to overcome the presumption and the taxpayer's burden of proof, the presumption's relevance is limited to explaining the evolution of the burden of proof.

Notwithstanding the long line of cases establishing that the taxpayer has the burden of proving the assessment is incorrect, the BOE contends this burden is inconsistent with the statutory scheme governing property tax assessments. Specifically, the BOE argues that only establishing the assessment is incorrect stops short of establishing value, the goal of a BAA proceeding. Therefore, it maintains the court of appeals correctly concluded that a taxpayer must prove an appropriate basis for an alternative reduced valuation.

The court of appeals concluded the BAA's reinstatement of the initial valuation was unsupported by competent evidence because the BAA was unable to reach an accurate valuation determination from the evidence presented. The court stated that the "taxpayer did not present any comparable sales evidence, and it ultimately discredited all the comparable sales evidence presented by the BOE. The BAA further ruled that it did not receive enough data from the parties to derive any accurate valuation." *Sampson*, 80 P.3d at 863.

The court of appeals' resolution suggests the phrase "appropriate basis ... for an alternative reduced valuation" requires the taxpayer to present appropriate evidence of value sufficient to enable the BAA to determine the value of the subject property. Further, the BAA's valuation must comply with the statute. *See, e.g., Resolution Trust Corp.*, 860 P.2d at 1388. Therefore, for the BAA to adopt the taxpayer's valuation, it must find that the taxpayer's valuation complied with statutory guidelines. *Id.* The

court of appeals' resolution implies, then, that the taxpayer must prove an alternative valuation that complies with the statute and allows the BAA to determine an accurate value.

Case law, however, has not required the taxpayer to prove an alternative valuation that complies with statutory requirements. In *Steamboat Ski & Resort Corp. v. Routt County Board of Equalization*, 23 P.3d 1258, 1260–61 (Colo.App.2001), the court of appeals upheld the BAA's valuation on the basis that it correctly determined the county's assessment was incorrect. The BAA rejected the taxpayer's income approach as too subjective, but nevertheless reduced the county's assessment by selecting a comparable sale presented, but not relied exclusively on, by the BOE. *Id.; see also Lawrence v. Bd. of Equalization*, 989 P.2d 232 (Colo.App.1999) (upholding BAA valuation determination that fell between valuations asserted by parties).

In addition, *501 South Cherry Joint Venture*, 817 P.2d at 588, is directly contrary to the BOE's position that a taxpayer must establish an appropriate basis for an alternative valuation. As noted above, in *501 South Cherry Joint Venture*, the court of appeals determined that the assessor and BAA failed to comply with the statute. *Id.* On this basis, it determined that the taxpayer met the burden of proving incorrectness; the court of appeals rejected both the taxpayer's proposed method of valuation and the proposed value. *Id.* at 588. As a result, it remanded to the BOE for new proceedings and entry of a new assessment. *Id.* Implicit in this remedy is the conclusion that the taxpayer met his burden of proof, despite insufficient evidence to value the property under the applicable statute, and that the BAA therefore had the authority to order a new determination. Likewise, in *Sunbelt Service Corp.*, 802 P.2d at 1200–01, the court of appeals concluded that neither the BAA nor the assessor complied with the statutory mandate. As a result, the court of appeals remanded to the BAA with authority to take additional evidence if necessary in the event that the taxpayer did not introduce evidence from which the BAA could determine value. *Id.*

Further, taxpayer protest cases consistently turn on whether the taxpayer established that the county assessor or BAA failed to comply with the statutory mandate, rather than whether the taxpayer also established an appropriate basis for an alternative valuation. The court in *Resolution Trust Corp.,* 860 P.2d at 1386, noted that a taxpayer who shows the assessor failed to comply with statutory requirements for calculating property tax assessments meets the burden of proving incorrectness. Consistent with *Resolution Trust Corp.,* in *Honeywell Information Systems,* 654 P.2d at 339–40, the taxpayer prevailed based on the conclusion that the assessment improperly included exempt property, despite the fact that the taxpayer did not demonstrate at the initial BAA proceeding the proper percentage to be allocated for the exempt property. In *501 South Cherry Joint Venture,* 817 P.2d at 585–87, the court of appeals' conclusion that the assessment was incorrect turned on the taxpayer's evidence that the assessor, and implicitly the BAA, erroneously allocated taxpayer's improvements and erred in the manner in which the value of taxpayer's property was determined. *Id.* at 588.

In this regard, a taxpayer is entitled to relief by demonstrating that the classification is incorrect. On this showing, the BAA has the authority to order reclassification, which ultimately requires reassessment by the county. *See Gyurman,* 851 P.2d at 309; *Farny v. Bd. of Equalization,* 985 P.2d 106, 109 (Colo.App.1999). Or, a taxpayer may prevail by demonstrating that the assessor failed to consider all elements of applicable approaches to appraisal. *See Transamerican Realty Corp. v. Clifton,* 817 P.2d 1049, 1052–53 (Colo.App.1991); *Majestic,* 30 Colo. App. at 567, 499 P.2d at 646. A taxpayer may also prevail where the assessor failed to properly consider a factor relevant to valuation. *See Cherne v. Bd. of Equalization,* 885 P.2d at 260; *Bd. of Assessment Appeals v. Bd. of Equalization,* 743 P.2d at 446; *City & County of Denver v. Bd. of Assessment Appeals,* 848 P.2d at 361. Finally, a taxpayer

may show that an assessment is incorrect where, as here, the county failed to take into account relevant differences in the physical characteristics of comparable properties. *See generally Golden Gate Dvlpmt. Co.,* 856 P.2d at 73; § 39–1–103(8)(a)(I).

Thus, relief is available regardless of whether the taxpayer provides an appropriate valuation so long as the taxpayer demonstrates that the assessment is incorrect.

To the extent the BOE also argues that the effect of article X, section 20 is to require the taxpayer to demonstrate an alternative valuation, we disagree. Article X, section 20 eliminates the presumption favoring a pending valuation in property tax appeals.[1] *See* Colo. Const. art. X, § 20(8)(c); § 39–8–108(6), C.R.S. (2004); *see also Russell,* 941 P.2d at 263. We agree with the court of appeals that article X, section 20 does not likewise address or modify the taxpayer's burden of proof at a BAA proceeding. *Sampson,* 80 P.3d at 862. Instead, we have concluded that the relationship between the "rebuttable presumption" and the burden of proof is simply historical. We view the presumption as otherwise irrelevant to this case.

By eliminating the presumption of correctness, article X, section 20 attempts to put the taxpayer on equal footing with the county. Under the BOE's approach, article X, section 20 would have the effect of changing the burden of proof from demonstrating incorrectness to demonstrating an alternative valuation, thereby imposing on the taxpayer a higher burden of proof. The taxpayer who demonstrated incorrectness but failed to produce an alternative valuation would be taxed based on the incorrect valuation as a result of the presumption's elimination under article X, section 20. We discern no reason to interpret article X, section 20 as having the unintended effect of increasing the taxpayer's burden of proof by requiring the taxpayer to demonstrate an alternative valuation. Rather, the elimination of the presumption comports with the rule that a taxpayer must demonstrate that an assessment is incorrect.

---

1. In *Podoll,* we stated that the "assessor's ascertainment of the value of property for taxation is presumed to be correct." 935 P.2d at 18. We were not presented with the issue of whether or how article X, section 20, affected the presumption favoring official regularity. Thus, we merely stated the rule without regard to article X, section 20.

The BOE also argues that this result is inconsistent with appellate procedures because it would allow the taxpayer to undercut the BOE's valuation decision before the BOE has introduced any valuation evidence for the taxpayer to refute. We disagree.

The taxpayer has long had the burden of disproving the assessment without the BOE introducing valuation evidence. In this regard, a taxpayer has always had the option of introducing a county's assessment to provide the board with a context or to draw comparisons between the county's assessment and the statutory requirements. As noted above, a taxpayer may request the assessor's data. There is no reason this evidence could not be presented in taxpayer's case-in-chief under the current statutory scheme. Further, the county's assessment may be admitted into evidence somewhat informally, as it was in this case, since it is known to all parties, readily available, and central to the hearing. Therefore, we do not agree with the BOE that the burden of proof announced here conflicts with appellate procedures generally.

Given our conclusion that the taxpayer's burden is to prove incorrectness, we recognize that the objective of determining a property's value will not always be accomplished at a BAA hearing. While the BAA members' expertise enables them to determine from the evidence presented by the taxpayer whether the county's valuation is incorrect, the taxpayer's evidence may or may not be sufficient to further establish the subject property's value for tax purposes. Thus, the BAA may properly remand the matter for an accurate assessment by the county, which is charged with the duty of assessing properties in accordance with the statutory mandate in the first instance. See *501 South Cherry Joint Venture,* 817 P.2d at 587–88.

While the burden of proving incorrectness may sometimes result in a hearing where value cannot be determined, the burden of proving incorrectness is consistent with and better serves state constitutional requirements. Although the narrow goal of the BAA proceeding is to value the subject property, the broader constitutional and statutory goal is to assess property at its "actual value" and to promote the principle of "equalized"

value. Permitting a demonstrably incorrect assessment to stand merely because a value could not be determined at the BAA proceeding would be entirely contrary to the broader constitutional goal of determining actual value and promoting equalized value. It is for this very reason that remand to the BAA or BOE may be appropriate where necessary to determine an accurate value.

Hence, consistent with our case law, a taxpayer who meets the burden of demonstrating that an assessment is incorrect need not also show an alternative valuation under the market approach to prevail. Thus, we conclude a protesting taxpayer may prevail at a de novo BAA proceeding by demonstrating that an assessment is incorrect.

Accordingly, we hold the court of appeals erred in determining that a taxpayer in a BAA proceeding must demonstrate an alternative, reduced valuation of actual value under the market approach.

### 2. Valuation of Sampson's Property

■■■■ We review BAA decisions under the Administrative Procedure Act, section 24–4–106(11). See § 39–8–108(2), C.R.S. (2004); *Colo. Arlberg Club,* 762 P.2d at 149. It is the function of the BAA, not the reviewing court, to weigh the evidence and resolve any conflicts. *Id.* at 151. A decision of the Board may be set aside only if it is unsupported by competent evidence or if it reflects a failure to abide by the statutory scheme for calculating property tax assessments. *See id.; Leavell–Rio Grande Cent. Assoc.,* 753 P.2d at 799; § 24–4–106(7), C.R.S. (2004).

■■■ There is sufficient evidence to support the BAA's conclusion that Sampson satisfied his burden of proving the assessment was "incorrect." *See Steamboat Ski & Resort Corp.,* 23 P.3d at 1260 (determinations regarding degree of comparability of sale and adjustments made are questions of fact for the BAA to decide).

The BAA specifically found, with record support, that the assessor did not use appropriate comparable sales. Sampson's home is located on a privately maintained road while the comparable sales used by the BOE were newer and approximately 25 miles away. In

addition, the BAA found that there is a basis for differences in value for mobile homes situated on permanent foundations and mobile homes situated on non-permanent cinder block foundations like Sampson's. Given the BAA's expertise, it could conclude based on the evidence that a permanent foundation increases the value of a mobile home and conclude that the assessor's office failed to comply with its statutory mandate by failing to address all factors affecting the valuations for mobile homes of this type. We agree, and therefore reject the court of appeals' conclusion that Sampson did not meet his burden of proof in the BAA proceeding. *Sampson,* 80 P.3d at 863.

The BAA also found that Sampson did not present comparable sales to support an alternative evaluation. It concluded that any adjustment made to the BOE's sales for factors affecting the value would be inaccurate. As a result, it was presented with insufficient data to derive adjustment calculations. Therefore, the BAA used the initial valuation of the assessor, which was not contested by Sampson.

█ Where the taxpayer satisfies his burden of proving the assessment incorrect, but does not present an alternative evaluation, the proper remedy is to remand for a new assessment. *See 501 South Cherry Joint Venture,* 817 P.2d at 587–88; *County Bd. of Equalization,* 743 P.2d at 447. Nonetheless, it is appropriate to reinstate a previous evaluation, and the resulting assessment, if the parties agree that a previous evaluation is acceptable. Although Sampson did not oppose the initial assessment, it is not clear from the record before us whether the BOE agrees that the initial valuation is acceptable.

### III. Conclusion

Accordingly, we reverse the judgment of the court of appeals and remand with directions to conduct further proceedings consistent with this opinion.